CASE 46.—PROSECUTION AGAINST WILLIAM UNDERWOOD FOR MURDER.—
JAN. 5.

# Underwood v. Commonwealth.

APPEAL FROM LAUREL CIRCUIT COURT—H. C. FAULKNER, CIRCUIT JUDGE.

DEFENDANT CONVICTED OF VOLUNTARY MANSLAUGHTER AND APPEALS.
AFFIRMED.

HOMICIDE—MANSLAUGHTER—EVIDENCE—SUFFICIENCY—WITNESSES FOR
STATE—ABSENCE OF NAME FROM SUBPOENA—VIEW BY JURY—AD-
MISSION OF EVIDENCE AT VIEW—SURPRISE—INSTRUCTIONS.

1 On a prosecution for murder, evidence considered, and HELD
sufficient to sustain a conviction of voluntary manslaughter.
2. There was no prejudicial error in the denial of a continuance in a

criminal case on the ground of of the absence of a witness, where the witness was afterwards produced and testified.

3. Though Cr. Code Practice, section 120, requires the names of witnesses who testify before the grand jury to be placed on the indictment, it does not affect the right of the State to call a witness whose name was not in the subpœna issued for the State.

4. The fact that witnesses whose names were not in the subpœna issued for the State were not excluded from the courtroom while other witnesses for the State testified, was not prejudicial to defendant where no witnesses for the State but themselves testified on the subject on which they testified.

5. On a prosecution for murder, testimony of witnesses as to certain holes in the clothing of deceased was not incompetent on the ground that the clothing was the best evidence.

6. An affidavit in support of a motion that the jury be discharged, or the evidence of certain witnesses excluded from the jury, on the ground that their evidence had been a surprise to defendant, which merely recited that the names of the witnesses were not in the subpœna issued for the State, and that they had never been called before, and that no such evidence had ever appeared in any of the former trials of the case, was insufficient.

7. On a prosecution for murder, the action of the trial court in receiving certain evidence explaining the situation while he and the jury were taking a view of the scene of the crime was not erroneous.

8. On a prosecution for murder defendant could not complain of the action of the trial court in permitting him to point out to the jury, while they were taking a view of the scene of the crime, the spot where accused had testified that he hid his pistol, it being additional testimony in his own behalf.

9. By the express provisions of Cr. Code Prac., section 281, the court of appeals has no jurisdiction to reverse a criminal case for an error of the court in overruling a motion for a new trial.

10. Where, on a prosecution for murder, it appeared that, if defendant shot deceased at all, he shot him from behind, and that deceased was not aware of the fact that defendant was an antagonist, deceased being engaged in repelling an attack by another, an instruction that, though defendant wrongfully began the affray, if he afterwards withdrew in good faith, his right of self-defense returned to him, was properly refused.

SAM C. HARDIN, ATTORNEY FOR APPELLANT.

1. It was error in the court to permit witnesses who had never been summoned in the case, and who were not indorsed on the

indictment, and who, although the rule had been made excluding them from the court room, had stayed and listened to the evidence, to be thereafter allowed to testify.

2. It was error in the court, when the jury went to view the ground where the difficulty occurred, to permit one of the jurors to ask appellant where he hid his pistol, and allow appellant to point out the place to him. The object of the law is that the testimony shall be heard in the court-house in public and in a connected way. In other words, the view of the place by the jury is not for the purpose of obtaining more testimony, but for the jury to see the premises in order that it may be better able to judge of and understand the testimony already given.

3. We submit, also, that the instructions given by the court to the jury were misleading, and therefore to the prejudice of appellant's substantial rights.


AUTHORITIES CITED.


Criminal Code, secs. 236, 244, 245, 225, 340; 90 Ky., 651; 17 Ky., 639.


N. B. HAYS, Attorney General, and L. MIX, for appellee.


1. We submit that the instructions of the lower court are not only correct, but are unusually clear in presenting every phase of the case.

2. We contend that the verdict is authorized under the law and evidence, and that a much severer sentence would have been authorized.

3. When the jury was viewing the ground where the difficulty occurred, one of the jury asked to be shown where the defendant had testified he hid his pistol, whereupon the court took defendant and his counsel and commonwealth attorney aside from the jury, and after conferring with them, it was agreed that defendant should go to the point where he claimed to have had his pistol, which point could be seen by each of the jurors without moving their position; this the defendant did, and there was no objection or exception to the matter at the time, and we claim that such act was not an error.


AUTHORITIES CITED.


Criminal Code, secs. 236, 340; Rutherford v. Commonwealth, 78 Ky.; 639; Austin v. Commonwealth, 4 R., 29.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

The appellant, William Underwood, was indicted by the grand jury of Laurel county, charging him in several counts, first, with conspiring with Ab. Early and Joe Harp to murder Ed. Jones, in furtherance of which the latter was killed; second, with the murder of Ed. Jones; and, third, with aiding and abetting Ab. Early and Joe Harp, and each of them, in the murder of Ed. Jones. To this indictment he pleaded not guilty, and a trial resulted in his being found guilty of voluntary manslaughter, and his punishment fixed at confinement in the penitentiary for four years.

The facts are, substantially, these: On the day of the killing, Ab. Early, Joe Harp, and William Underwood were engaged in playing at a game of dice or craps, which it, perhaps, would be more than flattery to call a game of chance. There were a good many others engaged in the game, and it is not clear who owned and controlled it, although there is evidence conducing to show that Underwood and his companions were its operators. Ed. Jones and a man by the name of T. J. McQueen, Sr., were standing near, watching the play. Jones asked McQueen to drop a quarter into the game for him, which was done, and the money lost, it being taken by Early. McQueen then said, substantially: "Come away, boys, they are playing with loaded dice," whereupon Ab. Early sprang to his feet, and, with a pistol in his right hand, commenced to strike McQueen in the chest with his left, and pushing him about, holding the pistol in easy range, and in a threatening manner. Jones, who seems to have been a friend of McQueen, interfered, and told Early that he ought not to treat an old man in that way. Early then transferred the assault he was making upon McQueen to Jones, holding his pistol in the same manner, and striking Jones in the chest with his left hand. The latter protested

that he had no weapon, and was not prepared to fight, and asked Early to desist from his attack, pulling up the skirts of his coat to show that he was unarmed. The men were separated at this point, and Jones taken some fifteen to twenty feet away, and given a pistol by one of his friends, said to have been T. J. McQueen, Jr. Early and Underwood left the game, and followed Jones to where he had been conducted by his friends, and the quarrel was renewed, resulting in Early firing upon Jones, and Jones returning his fire. Early was shot in the wrist or forearm, and Jones through the chest; whereupon Early commenced to retreat, firing as he ran, while Jones pursued him, firing upon him as he retreated. At this point, several shots were fired by other parties from behind Jones, one bullet entering his back, killing him instantly. Early and Harp were each tried for the murder, found guilty, and sentenced to the penitentiary, where they are now serving their terms. Upon the trial of this case several of the witnesses of the Commonwealth testified that they saw appellant shoot at Jones at the time he was killed, and others as to acts done and language spoken by him, which abundantly showed him guilty of aiding and abetting Early and Harp in the homicide, if the evidence was true. The testimony, however, on this point, was very conflicting. Several of the witnesses, who claimed to be present during the trouble, testified that he did no shooting, nor was in any way concerned in the killing. Under this state of case it is sufficient to say that there was evidence which authorized the submission of the case to the jury, and we will not revise their determination on the facts, but will content ourselves with reviewing the several questions of law raised by counsel for appellant.

Upon the calling of the case appellant moved for a continuance because of the absence of two witnesses, and filed an

affidavit in support thereof. This motion the court over-
ruled, it appearing that one of these witnesses was in the
United States army, and out of the jurisdiction of the court,
and that the other was within a short distance of London,
and his attendance could be easily procured. This was af-
terward done, and the witness testified for appellant, and
he was therefore not prejudiced by the adverse ruling.

During the trial the Commonwealth called as witnesses
two brothers by the name of Barnes, and two by the name
of Jones, the latter being brothers of the dead man, who tes-
tified to having seen a small hole through the pants and
drawers worn by the deceased at the time he was killed.
The names of these witnesses were not included in the sub-
poena issued for the Commonwealth, and appellant objected
to their evidence, and at the conclusion of the Common-
wealth's testimony filed his affidavit to the effect that he
was surprised by the testimony of these witnesses, and ask-
ed that the jury be discharged, and the case reassigned for
trial, or, if that could not be done, that their evidence be ex-
cluded from the jury as incompetent. Both of these motions
were overruled. Section 120 of the Criminal Code of Prac-
tice does require the names of the witnesses who testify be-
fore the grand jury to be placed on the indictment, but we
know of no rule, and the learned counsel for appellant has
cited us to no authority, holding that the Commonwealth
may not call such additional witnesses as may be able to
furnish evidence material to the prosecution. The record
does not show any request of the parties that the witnesses
should be sworn and excluded from the courtroom; but,
even if this were otherwise, the fact that these witnesses had
been in the courtroom while other witnesses for the Com-
monwealth testified would not have been prejudicial under the
circumstances, as no witness for the Commonwealth but

themselves testified on the particular subject upon which they deposed, and therefore what they may have heard could not have affected their evidence. Counsel insists that it was incompetent for these witnesses to testify about the hole in the clothing of the dead man, as it was the best evidence of what it showed. These witnesses testified to the physical facts of which they were cognizant. It was shown that the clothing was not within the jurisdiction of the court at the time of the trial, it having been carried out of the State by the widow of the deceased; but there was no more necessity for producing the clothing as the best evidence of its containing bullet holes than for producing the dead body as the best evidence of the wounds appearing on it. Moreover, there was no suggestion in the affidavit of appellant that the testimony of the witnesses was in any wise untrue, or that, if he were given an opportunity, he could contradict it. The affidavit simply recites the fact that the names of the witnesses were not on the subpoena, that they had never been called before, and that no such evidence had ever appeared in any of the former trials of the case; but it wholly fails to impeach the truth of the evidence itself. The surprise which will authorize the court to continue a case or discharge the jury is not the mere mental emotion of a party upon being confronted with evidence he hoped would not be produced, but must be the result of a practical injustice to his substantial rights. He must show that he has been in some way injured or misled by what has happened, and that, if a reasonable opportunity is afforded him, he can remedy the evil.

After the evidence was all heard, the court, upon motion of the Commonwealth's attorney, permitted the jury, under the charge of the sheriff, to go to the place of the tragedy, and view the premises; the judge, the accused, and his counsel, and the prosecuting attorney all being in attendance.

Underwood v. Commonwealth.

When at the scene, one of the jurors requested the judge to have the accused point out to them the particular spot where he had testified on the stand that he had hid his pistol. The judge having some doubt as to his right to do this, took the accused and his counsel aside, and, after some discussion, no objection being made, he was permitted to point out to the jury the spot. When the jury returned to the courtroom, his counsel for the first time entered an objection to what had taken place, and this is now insisted upon as a ground for reversal. We are able to see no reason why the judge should not have tried the whole case at the place where the tragedy occurred, if it suited his convenience so to do. There is no peculiar sanctity about the courtroom which requires trials to be held there. The courtroom is for the convenience of the court, but there is no reason that forbids the judge, in hot weather, for instance, to hold his court out in the yard under a tree, or any other place which better suited his convenience and the comfort of the jurors and the parties litigant; nor are we able to see in what way the interest of the appellant was prejudiced by being allowed to give additional testimony in his own favor to the jury. The Commonwealth's attorney might have objected to this, but there is no ground for complaint of it by appellant.

The court did not err in overruling the motion for a new trial based upon the newly-discovered evidence. Most of it would have been incompetent as hearsay, and the balance was merely cumulative. Besides, under section 281 of the Criminal Code of Practice we have no jurisdiction to reverse a criminal case for an error of the court in overruling the motion for a new trial.

Counsel for appellant earnestly insists that the court should have given the jury an instruction embracing the principle that, although the accused might have wrongfully begun the

Underwood v. Commonwealth.

affray in which the killing was done, yet if he afterward in good faith had withdrawn from it, and made it apparent to his antagonist that he had so withdrawn in the interest of peace, then his right of self-defense returned to him, and if his antagonist afterward attacked him he might then kill him in his apparent necessary self-defense. Instructions must be based on evidence; and, while the abstract principle contended for by the counsel for appellant is unquestionably correct, there are no facts in this record upon which it could have been predicated. Jones never knew that he had but one antagonist—Ab. Early; and while Early, after firing, retreated, this was not a withdrawal in the interest of peace, because he fired as he ran. If Underwood shot Jones at all, he shot him from behind, and without Jones' knowledge. There was never any withdrawal by Underwood in the interest of peace, and therefore there was no evidence which would have authorized the trial judge to give the instruction for the absence of which appellant complains.

Taking a survey of the whole case, we are impressed with the fact that the accused had a fair trial in every particular. The instructions, as given by the court, seem to contain the whole law of the case, but, if they are subject to any criticism whatever, it is that they are too favorable to appellant. The jury, under the facts as shown by this record, were more than lenient in their verdict, and this should be a matter of congratulation, rather than complaint, on the part of the accused.

Perceiving no error in the record, the judgment is affirmed.