## Hendrickson v. Commonwealth.

(Decided February 14, 1912.)

## Appeal from Belle Circuit Court.

1. Criminal Law—Grounds for New Trial Must Be Specified.—With the exception of errors committed in the admission or rejection of evidence, to which proper objection and exception must be made at the time, and appear in the bill of exceptions, it is necessary to point out in a motion for a new trial all errors committed during the progress of the trial upon which it is intended to rely in the Court of Appeals, or they can not be considered on appeal; neither will the Court of Appeals, except in the matter of instructions, consider errors that appear for the first time in a motion for a new trial.

2. Criminal Law—Indictment—Names of Witnesses to be Endorsed on. —Sec. 120 of the Criminal Code of Practice, which requires that when an indictment is found, the names of all the witnesses who were examined by the grand jury must be written at the foot of, or on the indictment, does not render incompetent other witnesses for the Commonwealth whose names were not in a subpoena or at the foot of the indictment. The purpose of this statute is to inform the defendant of the names of his accusers; it is directory, and ought to be complied with; but a failure to do so neither invalidates the indictment, nor prevents the introduction of witnesses whose names do not so appear.

3. Criminal Law—Indictment—Motion to Quash Not Reviewable.— Although an indictment fails to contain an endorsement of the witnesses examined by the grand jury, and this infirmity may be corrected by a motion to quash or set aside the indictment upon the arraignment of the prisoner, as required by Section 157 of the Criminal Code, nevertheless, under Section 281 of the Criminal Code the decision of the court upon a motion to set aside the indictment is not subject to exception, and can not be reviewed upon appeal.

4. Criminal Law—Indictment—Presentation of.—An indictment which was "Received from the hands of the foreman of the grand jury in the presence of the grand jury and filed in open court, on the 31st day of August, 1911, R. B. Rice, Clerk," was properly returned under Section 121 of the Criminal Code of Practice, which requires that the indictment must be presented by the foreman, in the presence of the grand jury, to the court, and filed with the clerk, and remain in his office as a public record.

5. Criminal Law—Selection of Jury—Not Reviewable Upon Appeal.— Under Section 281 of the Criminal Code of Practice, which provides that the decision of the Circuit Court upon challenges to the panel shall not be subject to exception, the Court of Appeals is without power or jurisdiction to revise the erroneous ruling of the Circuit Judge in the selection of the jury.

6. Criminal Law—Evidence—Conspiracy.—When two or more persons conspire to commit an offense, everything said, done or writ-

ten by one of them in the execution of a furtherance of their common purpose, is deemed to be said, done, or written by either one, and is deemed to be a relevant fact as against each of them; but statements as to measures theretofore taken in the execution or furtherance of such common purpose, are not deemed to be relevant, as such, against any conspirator, except those by whom, or in whose presence, such statements were made.

7. Criminal Law—Instructions—Ungrammatical in Form.—Slight verbal or technical inaccuracies, not calculated to mislead the jury, will not vitiate an instruction. So long as the law is stated correctly and intelligibly, the ultimate test of the soundness of instructions is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions.

8. Criminal Law—Instructions as to Self Defense.—Where three brothers were jointly charged with murder, the one on trial could only shoot in the self defense of himself, or his brothers, while acting upon his own belief, based upon reasonable grounds, as to the impending danger to himself or to them; he was not justified in shooting upon what they might have believed to be the danger.

O'REAR & WILLIAMS, E. N. INGRAM and J. M. GILBERT for appellant.

JAMES GARNETT, Attorney General and JAMES D. BLACK, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On August 15th, 1911, "Mexican Joe" Morgan was shot and killed at Four Mile, in Bell County. The appellant, Nick Hendrickson, and his brothers, Elbert and Press Hendrickson, were arrested and jointly indicted on August 31st, 1911, upon the charge of having wilfully murdered Morgan. The indictment contains two counts; the first charging the three brothers with killing the deceased, and the second charging that one of them, which one however is not known, to the grand jury, did the killing, while the other two were present and aided and abetted in the murder. Appellant's trial was begun on October 9th, 1911, and resulted in a verdict and judgment committing him to the penitentiary for life. He appeals; and in his motion for a new trial he assignes as reasons for a reversal of the judgment the following grounds: (1) that the verdict is not sustained by the evidence; (2) error of the trial court in refusing to admit competent evidence in appellant's behalf; (3) error of the trial court in admitting incompetent evidence to appellant's prejudice; and (4) error of the trial court in

instructing the jury. In addition to these assigned errors the following further grounds are urged in argument here for reversal of the judgment; (5) that the names of all the witnesses for the Commonwealth who appeared before the grand jury were not written at the foot of, or on the indictment as required by section 120 of the Civil Code; (6) that the indictment was not presented by the foreman of the grand jury to the court, in the presence of the grand jury, and filed with the clerk, as is required by section 121 of the Civil Code; and (7) that the jury was not drawn from the wheel or drum, as is required by section 2247 of the Kentucky Statutes.

It is insisted on behalf of the Commonwealth that the court's jurisdiction upon this appeal is limited to a review of the grounds stated in the motion and grounds for a new trial, and that none other can be considered. Section 274 of the Criminal Code of Practice reads as follows:

"The grounds upon which a motion for a new trial is made, must be stated in writing, and filed at the time of making the motion."

This question has been before this court many times, and the practice is well settled in favor of the contention of the Commonwealth.

In Ison v. Commonwealth, 23 Ky. L. R. 1805, we said:

"It is a well settled rule of this court that appellant should state in his reasons for a new trial, the grounds upon which he thinks the prejudicial error was committed. If the attention of the trial court had been called to this error, if such error, in fact, occurred, doubtless the circuit judge would have granted a new trial."

And in the late case of Thompson v. Commonwealth, 122 Ky., 501, this court said:

"From these Code provisions, and the various decisions relating thereto, the rule may be deduced that, with the exception of errors committed in the admission or rejection of evidence, to which proper objection and exception must be made and taken at the time and appear in the bill of exceptions, it is necessary to point out in a motion for a new trial, all errors committed during the progress of the trial upon which it is intended to rely in this court, or they cannot be considered on appeal, nor will this court, except in the matter of instructions, consider errors that appear for the first time in a motion for a new trial.

Furthermore, section 281 of the Criminal Code of Practice as amended by the act of 1910, provides as follows:

"The decisions of the court upon challenges to the panel, and for cause, or upon motions to set aside an indictment, shall not be subject to exception."

In first disposing of the grounds not specified in the motion and grounds for a new trial, it is sufficient to say that the fifth objection, based upon the fact that the indictment does not show the names of all the witnesses who were examined by the grand jury were written at the foot of or on the indictment, can avail appellant nothing under the repeated decisions of this court. The indictment bears this endorsement "Witnesses, Lizzie Morgan and others."

In Underwood v. Commonwealth, 119 Ky. 384, and in Tompkins v. Commonwealth, 28 Ky. L. R., 643, it was held that the provisions of section 120 do not render incompetent other witnesses for the Commonwealth whose names were not in any subpoena, or at the foot of any indictment.

In speaking of Code provision 120 above referred to in Dowell v. Commonwealth, 32 Ky. L. R. 1344; 108 S. W. 847, we used the following language:

"The purpose of this statute is to inform the defendant of the names of his accusers. It is directory and ought to be complied with. But a failure to do so neither invalidates the indictment nor prevents the introduction of the witnesses whose names do not so appear. Underwood v. Commonwealth, 119 Ky., 384, 27 Ky. Law Rep., 8; 84 S. W., 310."

And although an infirmity of this character in the indictment may be corrected by a motion to quash or set aside the indictment upon the arraignment of the prisoner, as required by section 157 of the Code, nevertheless under section 281 of the Code above quoted the decisions of the court upon a motion of this character is not subject to exception, and can not, therefore, be reviewed upon appeal.

The sixth objection is based upon section 121 of the Criminal Code of Practice, which reads as follows:

"The indictment must be presented by the foreman, in the presence of the grand jury, to the court, and filed with the clerk, and remain in his office as a public record."

In this case the indictment bears the following en-

dorsement: "Received from the hands of the foreman of the grand jury, in the presence of the grand jury, and filed in open court, on the 31st day of August, 1911, R. B. Rice, Clerk."

The point is made that this endorsement fails to snow that the indictment was returned to the court, as is required by section 121, above quoted. The objection, is, however, over critical, since the endorsement shows that the indictment was filed in open court, which is equivalent to returning it to the court. A substantial compliance is all that is required.

In Patterson v. Commonwealth, 86 Ky., 316, an endorsement upon an indictment reading: "This day the foreman of the grand jury reported an indictment, a true bill, against Albert Turner, and William Patterson for willful murder and previous convictions, which said indictment is as follows," etc., was held to be a sufficient compliance with section 121 of the Code.

And, in Pearce v. Commonwealth, 10 Ky. Law Rep., 178, an endorsement upon an indictment reading: "Received from the foreman of the grand jury, in the presence of the grand jury, and filed in open court," practically the same wording as in the case at bar, was held to be a sufficient compliance with the requirements of the Code.

See Pence v. Commonwealth, 95 Ky., 618; Commonwealth v. English, 6 Bush, 431; and Jane v. Commonwealth, 3 Met., 18, for rulings showing the liberality with which this section of the Code has been construed by this court in holding, in effect, that an endorsement which identifies the indictment, is sufficient.

As to the seventh objection, concerning the selection of the jury, it is sufficient to say that section 281, above quoted, precludes our examination of that question.

In Turner v. Commonwealth, 25 Ky. Law Rep., 2161, we said:

"In Curtis v. Commonwealth, 110 Ky., 845, it was held that the manner of selecting the jury in that case was unlawful. But, as section 281, Criminal Code of Practice, provides that 'The decisions of this court upon challenges to the panel and for cause, upon motion to set aside an indictment, and upon motions for a new trial, shall not be subject to exception,' this court is without power or jurisdiction to revise such an error, and though in one or two cases previously decided the court appeared to have held otherwise, it has, since the

decision in Curtis v. Commonwealth, supra, uniformly adhered to the rule therein expresed.''

See also Alderson v. Commonwealth, 25 Ky. Law Rep., 32; and Terrell v. Commonwealth, 13 Bush, 246.

Recurring now to the grounds specifically assigned in the motion for a new trial, we are by no means prepared to say that the verdict is not sustained by the evidence. And since that question is now reviewable under the amendatory Act of 1910 to section 281, supra, a brief review of the testimony becomes necessary. Wilson v. Commonwealth, 140 Ky., 3.

Morgan was conducting an itinerant show, his outfit consisting of two tents, a large tent, in which the show was conducted, and a smaller one placed about fifty yards distant, which he used as a sleeping tent for his family and employes. The night performance had ended, and Elbert Hendrickson was seen by Morgan in company with one of the girls connected with the show. There is testimony to the effect that Morgan reprimanded the girl, and this led to hot words from Elbert Hendrickson, who accosted Morgan while he was standing at the entrance of the sleeping tent. There is an irreconcilable conflict in the testimony as to who fired the first shot, but a majority of the witnesses testify that Elbert Hendrickson fired the first shot. Morgan was killed, and the girl was wounded. Appellant was standing a short distance from the sleeping tent when the quarrel between Morgan and Elbert began; and four witnesses testify that Elbert called to appellant to come to him, saying he needed him, because the show men were trying to run over him. Two of these witnesses testify that appellant responded to Elbert's call and while going to his brother he said, ''Don't call my name so loud.'' Three witnesses also testify that appellant was present and took part in the shooting that resulted in the death of Morgan. Appellant contradicts this, and insists that he was not present at the shooting, but was at another place on the grounds. The weight of the evidence, however, is against him. And, although the character of many witnesses, upon either side, have been impeached, nevertheless the weight to be given to their testimony was for the jury to decide.

Numerous exceptions were taken to the admission of testimony during the trial, and many of them are of such insignificance that we do not deem it necessary to review them in this opinion. The chief objection in this connec-

tion, however, is based upon the ruling of the court which admitted certain declarations and acts upon the part of Elbert and Press Hendrickson immediately before the shooting, and in relation thereto.

An instance of this character of testimony is found in the testimony of Mollie Maynard, who says that she saw Press Hendrickson as she was coming out of the show a few minutes before the killing occurred, and that she hear him say, ''When it is over with I will tear up this damn thing.''

Again, Sam Payne was asked if he heard Elbert make any statement with reference to killing some one before the shooting occurred, and Payne answered, ''He said before the show broke that he wanted to kill a man so G— d—— bad, that he could not stand it.''

It is insisted that this testimony is not competent because it was not made in the presence of the appellant.

It will be remembered, however, that the three brothers were charged with a conspiracy to murder Morgan; and that being true, the acts or declarations of one were competent against the others.

The rule is that when two or more persons conspire to commit an offense, everything said, done, or written by any one of them in the execution of a furtherance of their common purpose, is deemed to be said, done, or written by any one of them, and is deemed to be a revelant fact as against each of them; but statements as to measures theretofore taken in the execution or furtherance of any such common purpose are not deemed to be relevant as such against any conspirators, except those by whom, or in whose presence such statements were made. Stephen's Digest of Evidence, Art. 4; 3 Greenleaf's Ev. (16th Ed.), Sec. 94; Miller & Smith v. Commonwealth, 78 Ky., 15.

This testimony was properly admitted as the declarations of co-conspirators.

We have carefully examined the many other exceptions to evidence, but fail to find that appellant's substantial rights have been prejudiced by the ruling of the court either in admitting or in rejecting evidence.

Finally, it is insisted that the court erred in instructing the jury. The first instruction properly submits the question of appellant's guilt as principal, whether for murder or manslaughter; the second submits the question of appellant's guilt as aider and abettor; the third relates to the question of the degrees of guilt, and

admonishing the jury to give the defendant the benefit of the doubt; while the fourth defines the technical words "wilful," "wilfully," "feloniously," and "malice aforethought." No substantial objection is urged against any one of these instructions.

Serious objection is taken, however, to the fifth instruction upon the question of self-defense, which reads as follows:

"If you shall believe from the evidence that at the time the defendant, Nick Hendrickson, shot at and wounded Joe Morgan, so as that he died thereby, if he did so do, or at the time the defendant, Nick Hendrickson, aided, abetted, counselled, advised, incited or encouraged Elbert Hendrickson, and Press Hendrickson or either of them to so shoot and wound said Joe Morgan, if· he did so do, he believed, and had reasonable grounds to believe, that he or Elbert Hendrickson and Press Hendrickson, or either of them, was then and there in danger of death or the infliction of some great bodily harm at the hands of said Joe Morgan, and that it was necessary, or was believed by the defendant, in the exercise of a reasonable judgment, to be necessary, to shoot and wound the deceased, or to aid, abet, counsel, advise, incite or encourage Elbert Hendrickson and Press Hendrickson, or either of them to so shoot and wound the deceased, in order to avert that danger, real, or to the defendant, Nick Hendrickson, apparent, then you ought to acquit the defendant upon the ground of self-defense or apparent necessity therefor, or the defense of another or apparent necessity therefor."

The first objection to this instruction consists of a grammatical criticism. The language is: "If you shall believe from the evidence that at the time the defendant, Nick Hendrickson, shot and wounded Joe. Morgan, so as that he died thereby, if he· did so do," etc. It is insisted that the qualifying clause "if he did so do" refers to the dying of Joe Morgan, a fact which was as necessary to be believed by the jury in finding its verdict, as that the defendant shot him.

Continuing, the instruction reads: "Or at the time the defendant, aided, abetted, counselled, advised, incited or encouraged Elbert Hendrickson, and Press Hendrickson, or either of them to so shoot and wound said Joe Morgan, if he did so do," etc. Again it is insisted that the qualifying clause "if he did so do," relates to the fact of Elbert or Press Hendrickson's having shot and

wounded Joe Morgan, and not whether Nick Hendrickson aided or abetted the shooting.

Although it may be conceded that the instructions are not strictly grammatical in form, and, are possibly subject to criticism for that reason, we do not see how they could have misled the jury. We must attribute ordinary common sense to the jury; and by the exercise of an ordinary degree of intelligence the jury could not have been misled in the way counsel for appellant insist that they may have been misled. The qualifying clauses above referred to, clearly were intended to refer, in the first instance, to the shooting of Joe Morgan by Nick Hendrickson; and in the second instance, to Nick Hendrickson's aiding and abetting in the shooting. To hold otherwise would be saying that the jury were searching for a hidden and unintended meaning not thought of at the time.

In 38 Cyc., 1595, 1598, it is said:

"It is very generally held that slight verbal or technical inaccuracies not calculated to mislead the jury will not vitiate the instructions. * * * So long as the law is stated correctly and intelligibly, the ultimate test of the soundness of instructions, it has been said, is not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions."

The fifth instruction above quoted relates to self-defense, and it deals with the right of appellant to shoot in his own or his brothers' defense, or to aid or abet them in their defense. Counsel for appellant insist that it rests appellant's right to act upon his belief, and the reasonableness of the grounds as they appeared to him, to shoot or to aid the other who did the shooting; and that it is faulty in that nowhere therein is the law of self-defense, as it applied to Elbert or to Press Hendrickson, given.

The instruction declares that if appellant believed, and had reasonable grounds to believe, that either he or his brothers, Elbert or Press, was in danger of great bodily harm at the hands of Morgan, and that it was necessary, or believed by appellant to be necessary in the exercise of a reasonable judgment, to shoot or to aid or encourage either of his brothers to shoot in order to avert that danger, then appellant had the right to shoot

and was entitled to an acquittal. In other words, appellant could only shoot in the self-defense of himself or his brothers, while acting upon his own belief, based upon reasonable grounds, as to the impending danger to himself or to them, and was not justified in shooting upon what they might have believed to be the danger. In so ruling, we are of opinion the trial court gave appellant all he could have asked, under the law.

Instructions substantially the same in effect as the one here given, were approved by this court in Watkins v. Commonwealth, 123 Ky., 817; Gambrel v. Commonwealth, 130 Ky., 528; Arnett v. Commonwealth, 130 Ky., 270; Gambrel v. Commonwealth, 142 Ky., 841; and in Henson v. Commonwealth, 139 Ky., 175.

Judgment affirmed.