## Winkler v. Commonwealth.

(Decided May 28, 1929.)

C. C. WILLIAMS for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON.— Reversing.

Tom Winkler was indicted in the Rockcastle circuit court for the murder of Milton Taylor. On the trial of the case he was found guilty of manslaughter and his punishment fixed at 21 years' imprisonment. He appeals.

According to the proof for the commonwealth, Winkler and Chester Sowder were at an old house on the side of the Dixie Highway for the purpose of repairing it for Jones Fish, who had bought the land at a judicial sale and employed them to repair the house. While they were there, early in the morning, Milton Taylor approached with a bucket in his hand. He asked Sowder what he was doing. Sowder told him that he was working. He then went to the door and Winkler came to it. They "jabbered around a right smart." Sowder did not hear what they said. After two or three minutes Taylor went on towards the chicken house on the premises, about 50 yards from the house they were repairing. While

Taylor was gone Winkler walked back and forth through the house trembling and shaking. In about five minutes Taylor returned. The chopping ax was setting close to the door. When Taylor returned he heard them talking. Taylor gave Winkler the G— d— lie. The next thing he heard was Taylor saying, "Get away Tom; get away Tom!" At that time Winkler had the ax in his hand and was holding Taylor by the shoulder. Taylor was lying down on the ground. Sowder then jumped up and ran to the door. Taylor was motioning Winkler back with his right hand. Winkler had the chopping ax in his right hand and hit Taylor in the top of the head with it. His skull was crushed by the blow. He fell down on the ground, and Winkler left. Taylor died a day or two later. Sowder, the only person there, was a nephew of Taylor and also a nephew of Winkler's wife.

On the other hand the defendant testified that when Taylor saw Chester Sowder he said: "What in the hell are you doing up here?" Sowder said: "I came up here to work for Tom Winkler and Jones Fish." Taylor said: "You had better get away." Sowder said: "I am going to work here." By that time Winkler had come around to the door and was showing Sowder what he wanted done. Taylor came out and tried to run Sowder off. He then said to Winkler; "G— d— you, didn't I tell you to stay off this hill?" Winkler said: "I am going to work on this house." Taylor said: "You ain't going to work up here." Winkler said; "Go on away and let me alone." Taylor said: "You had better be gone when I come back; I wont be gone long either." In about five minutes he came back to the door and said: "Didn't I tell you, G— d— you, to get out of here?" Winkler said: "I aint going." And Taylor threw his hand back in his pocket. When he did that Winkler took the chopping ax and shoved him back. The ax was setting by the side of the door. Chester Sowder had placed it there. Winkler says: "I didn't want to hurt him, and I just put it to him and shoved him with the back of the ax; put it near his stomach. I shoved him down, and I jumped out of the door. He went to get up and he got up on his hand, and was still making for his gun with his right hand, and I knew that he was a larger man than I was, and I held the ax in one hand and struck him with it. All I did that for was to save myself." The defendant offered to prove that a few days before this Taylor met him on the pike

and told him that if he did not get off that place he aimed to kill and drag him off by the heels. Winkler said: ''I am not going.'' Taylor said, with an oath: ''You had better go, it will be better than to have to be dragged off of here.'' He also offered to prove that Taylor had threatened to come to his house and kill him; that he said he ''aimed to kill him if he had to come to his door and kill him''; that Winkler could not live under his nose. The defendant also offered to prove that some days before Winkler had had John Clifford working there and that Taylor came up mad and told them to stop. ''Clifford said, 'I will stop working;' and Taylor then said, 'All right, I haven't any hard feelings against you, but I don't give a damn for Tom Winkler's feelings.' He also said that he wasn't going to put him off any more if he did he would put him off dead.''

This evidence was improperly excluded. In order for the jury to determine intelligently whether the defendant had reasonable grounds to believe, and did believe, that he was in danger, they should be placed in the light of the actual circumstances surrounding the parties, and to this end previous threats or proof of bad feeling should have been admitted. Forman v. Commonwealth, 228 Ky. 696, 15 S. W. (2d) 450, and cases cited. The proof, too, that two pistol shots had been fired there a few days before with the purpose, apparently, of frightening the men away, should have been admitted, although there was no proof that Taylor fired these shots; but as there was no motive shown for any one else firing them and no other reason shown for the firing of the shots, it was a fact to be considered by the jury in determining whether defendant had reason to believe he was in danger. Its weight was for the jury. It may have influenced him.

In his concluding argument the attorney for the commonwealth said this: ''I challenge the reasoning of the gentlemen upon the other side. I maintain and the proof shows the title to this land is still in controversy and I so advised the deceased and Mr. Fish. I don't care if Fish did have a deed to it and if Sheriff Tipton had received a writ of possession, still Milt Taylor questioned the title of Fish and had never been dispossessed because Mr. Tipton so stated in his evidence.''

The defendant's exceptions to this argument should have been sustained. It was improper for the attorney

to go beyond the evidence heard on the trial. He had no right to tell the jury that he had advised the deceased that the title to the land was still in controversy, or to tell the jury what his opinion was as to the rights of the parties; for this opinion rested on facts not shown by the evidence. The sheriff's testimony as to the execution of the writ of possession was in these words:

"At the time I served the last paper in regard to dispossession of the property, me and Milt went around to the little house and he said, 'There is no stuff in there to amount to anything,' and he went up to the yard of the house, and I said, 'Milt, the papers are to dispossess you,' and he said, 'I don't want to have any further trouble about this business, I want to get the title to this land back,' and I said, 'You go ahead and get papers to gain it back and I will get papers to serve on the other parties,' and he said, 'I will get the stuff out and don't want to have no more trouble about it. I am going to court and gain my land back,' and I said, 'That is the thing to do,' and I left him getting some barrels out of the house,"

There was no contrary evidence. The attorney's statement should have been confined to the fair effect of evidence, and this showed that Taylor had promised the sheriff to get his stuff out and to have no more trouble about the possession. So far as appears Taylor had on the premises, at the time in question here, only the chickens in the chicken house. The house on which Winkler was working was vacant. He was in possession of it. The attorney, also, in substance, said to the jury, repeating it time and again, that he believed that Winkler put the ax at the door for the purpose of killing Taylor when he came back and that it was a deliberately planned murder. The attorney may properly argue the evidence to the jury and may properly argue what the evidence shows, but he should not state to the jury his personal beliefs not based on the evidence in the case.

The fact that the parties were in a controversy over the title to the land was competent to put the jury in the light of circumstances of the parties when they met and and to explain their conduct. But neither of them had the right to settle that controversy by force. Such a controversy must be settled in court. The court on an-

other trial will so admonish the jury. The deed which Fish had received for the property and the writ of possession in his favor, with the sheriff's return thereon should be admitted in evidence. The rest of the record is not material, except to show that Taylor's motion above referred to had been overruled by the court if such is the fact. On another trial the court will omit from instruction 4 the last sentence, beginning with the words, ''But the defendant was authorized to use only.'' While this sentence is good law, it is necessarily expressed in the preceding part of the instruction, and to repeat it may give undue emphasis to this idea. It has never been the custom of the court to give the addition to the instruction for this reason. On the whole case a new trial should be granted.

Judgment reversed, and cause remanded for further proceedings consistent herewith.