## City of Somerset v. Guffey.

(Decided March 24, 1933.)

BEN V. SMITH & SON for appellant.

W. M. CATRON and W. N{ FLIPPIN for appellee.

Opinion of the Court by Judge Clay—Reversing.

Mrs. M. A. Guffey, who owns a house and lot on

Bourne. avenue in the city of Somerset, brought this suit against the city to recover for the injury to her property alleged to have been due to the construction of the street in such a negligent manner as to cause the natural fall of water to accumulate and overflow her premises. The first trial resulted in a verdict and judgment for the city. A new trial was granted, and on the second trial the jury returned a verdict in favor of Mrs. Guffey for $550. The city appeals.

At the outset we are met by the insistence that the trial court erred in granting the new trial.

While it is the rule in this state that the trial judge has a broad discretion in granting a new trial, and we are reluctant to interfere with his action unless he abuse that discretion, it is also the rule that the granting of a new trial is error if the ground on which the judge acted, and the other grounds relied on, were insufficient. Smith et al. v. Smith et al., 243 Ky. 240, 47 S. W. (2d) 1036.

One of the grounds relied on for a new trial was that the court erred in permitting the jury to view the property when it was not raining, and had not been raining for some time, and it is said that this is the ground on which the new trial was granted. There is evidence that it was actually raining at the time, but, even if it was not raining, that fact would not authorize the court to grant a new trial. The purpose of the view is not to supply evidence, but to present the physical facts in order that they may understand the situation and appraise and apply the evidence in a more intelligent way.

The only other ground which it is claimed was sufficient to authorize the action of the court is that the verdict was flagrantly against the evidence. The determination of this question will require a resume of the evidence. Miss Anna Guffey, a daughter of Mrs. M. E. Guffey, testified that, prior to the construction of the street, the water did not overflow the premises. Since that time the water poured down the sidewalk and ran into the yard and cellar. In her opinion the property had been damaged $1,500. T. W. Denney fixed the damages to the premises at $500 or $600. If, however, as much water went over before the construction as . after, there was no damage. All the water

drained in the direction of the premises. W. H. Fisher, a merchant, testified that, if the water was three or four inches deep in the cellar, the damage would be $500. H. H. Logan testified that, if the water overflowed in large quantities and went into the cellar and destroyed the use of the cellar, the damage was $1,000. Chester Greene, a member of the city council, testified that the water ran down the sidewalk, but he did not know that it ran into the cellar. It went down the side of the house. He had seen the property just after rains, and he never saw the water go over. He judged the property was worth now about $1,500. Otto Fitzgerald was acquainted with the property before the construction of the street and afterwards. Since its construction the water gathered about a foot deep in the cellar. He had also seen the water on the sidewalk flowing over, and it was about two inches deep. Charlie Guffey testified that before the construction the water did not gather in large quantities and run over his mother's premises. Now it runs over the sidewalk into her cellar. The damage was almost the value of the property. W. T. Reilly never saw water flowing into the cellar before the construction of the street, but had seen it since that time. He considered the damage about half the value of the property. He admitted on cross-examination that the property was lower than the sidewalk. James Campbell testified that he had never seen the water run over into the property and the cellar before the construction. Since construction he had seen water flow into the yard, but had never seen it in the cellar. The drainage was down toward Mrs. Guffey's property. Herbert Guffey, another son of Mrs. Guffey, testified that before the construction of the street no water accumulated in the cellar. After that time it did accumulate. Lee Guffey, another son of Mrs. Guffey, testified that since the construction of the street the rain came down the sidewalk two inches deep. A. Cable testified that since the construction the water comes down the street and cuts into the cellar. It runs way up on the sidewalk and for about eight inches on one side you can't walk in it. He fixed the difference in the value of the property at $2,000.

On the other hand W. C. Norfleet, the mayor, testified that there was an old worn out street in front of Mrs. Guffey's residence. Her lot was below the level

of the street about sixteen or twenty inches. Prior to 1925, the grade of street had never been established.[j] The present street is five inches higher than the old one. The construction was a first-class job. He visited the property often, and the property was worth just as much now as it ever was. All the property east of Mrs. Guffey's was higher, and the natural flow of the water was in that direction. They had hard rains the week before he testified, and there was no water in the cellar. John Trimble, who was engaged in the concrete business and did the concrete work, testified that the engineering plan was good, and that the work was well done. Dexter Silvers, formerly a member of the council, testified that the Guffeys complained that the street was built too high, but made no complaint about the water. Sam Waddle, street foreman, had been to the Guffey premises when it was raining, and saw no water going over the premises, except what was falling on it. John Burton, member of the street department, never saw any water on the premises except what fell on the sidewalk. He had never been in the cellar. George Bugg, one of the street committee, had been to the property after a big rain, and never saw any water going on the property. Robert Warren, who worked for the street department, had seen the property after a big rainfall, and never saw any water running across the property. Rufe Ashurst, an engineer, testified that the grade at Bourne avenue was first established in 1925, and that the construction was good. Luther Guffey and Miss Anna Guffey testified that they made protests to the mayor.

It will be observed from the foregoing resume of the evidence that there is a sharp conflict in the evidence as to whether the reconstruction of the street caused the water to flow in greater quantities on the property and into the cellar, and as to whether there was any depreciation in the market value of the property after the construction of the street. Clearly, as the property was located on lower ground than the surrounding property, and at a point where the natural drainage was in that direction, and the credibility of the witnesses who testified on the question was for the jury, it cannot be said that its verdict is flagrantly against the evidence.

It follows that the new trial was improperly granted.

Wherefore, the judgment is reversed and cause remanded, with directions to substitute in lieu thereof the judgment rendered on the first trial.