James Vincent **BARNETT**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 20, 1966.

R. B. Bertram, Bertram & Bertram, Monticello, for appellant.

Robert Matthews, Atty. Gen., Harold T. Hotopp, Asst. Atty. Gen., James A. Hicks, Commonwealth's Atty., Albany, for appellee.

PALMORE, Judge.

The appellant, James Vincent Barnett, was indicted for the murder of his sister's husband, Steve Davis. He was found guilty of voluntary manslaughter and sentenced to 21 years in prison. KRS 435.-020. As the conviction must be reversed, we shall discuss only those subjects of claimed error that may be encountered again in the course of a new trial.

Appellant and the Davises lived next door to each other in a rural section of Wayne County. The two dwellings were about 30 or 40 feet apart and belonged to the Davises. Some bootlegging was going on at one or both places, as a result of which charges were pending in the county court against the Davises. Davis had steady employment at Monticello, but appellant was unemployed (ostensibly so, at least). In the late afternoon of Monday, August 4, 1964, when Davis got home from work, his wife and brother-in-law (appellant) were over at appellant's house with several "guests," one of whom already had succumbed to the soporific qualities of the day's bill of fare, which happened to be beer, and was fast asleep in the front porch swing. After putting some groceries in his home, Davis joined the group next door and they all proceeded to have a few beers.

As the evening wore on and after some of the visitors had departed, hostilities broke out between Davis and Loma Leah, his wife, and culminated with Davis sitting on top of Loma Leah in the front or side yard of appellant's house holding her by the hair of the head with one fist and clouting her in the face with the other. At this stage of the proceedings appellant, who in the meantime had gone into his house and procured a pistol, struck Davis on the face or head with the pistol, whereupon Davis got up and went into his own house. According to both appellant and Loma Leah, he returned at once to the kitchen door and began firing a gun in their direction. Appellant returned fire and Davis fell dead inside the door with a bullet in his heart.

There were no eyewitness accounts excepting those of appellant and his sister, Loma Leah Davis. Of the two other persons present when the battle brewed, one was still asleep on the porch swing and the other says he left and saw no more after Davis came out of the house and seized Loma Leah by the hair.

Following the shooting, appellant and his sister awakened the slumbering visitor and the three of them fled to Tennessee. They soon returned and were arrested. They were jointly indicted for the murder of Davis, but this proceeding involves the separate trial of appellant alone.

The first claim of error is that the court permitted numerous references to the drinking going on at the scene of the shooting, creating a prejudicial effect on the minds of the jurors of this dry county. It may well be that appellant was cast in an unfortunate light, but we do not know how the drinking could have been separated from the general circumstances with which the jury needed to be acquainted in order to determine just what happened and why. Clearly the alcoholic backdrop was an integral part of the res gestae. Cf. Asher v. Commonwealth, Ky., 275 S.W.2d 416 (1955); Broughton v. Commonwealth, 309 Ky. 127, 216 S.W.2d 935 (1949); Baker v.

Commonwealth, 305 Ky. 88, 202 S.W.2d 1010 (1947).

On cross-examination, after first indicating that he did not know what the quarrel between the Davises was about, appellant was asked if he had not told certain officers that it arose out of the liquor charges pending against Loma Leah in the county court. At this point, before the question was answered, the trial court admonished the jurors that in determining appellant's guilt or innocence they should not consider "whether or not he was involved in the transportation of liquor or his sister either." Appellant contends that this reference to *his* being involved in the liquor business was prejudicial.

The court might appropriately have withheld an admonition until such time as the Commonwealth saw fit to introduce an impeaching contradiction (which in fact it never did). However, we do not think it was improper for the trial judge to give a preliminary caveat of this sort in an effort to prevent the jury's being led astray in the meantime. It is true that there had been no direct evidence that appellant had been or was illicitly trafficking in alcoholic beverages, but surely the jurors were alive and alert enough to have inferred it already from the outward circumstances of the case. Here was a group of people visiting him at his home, for what purpose he professed not to know, and one of whom he could not even identify, staying there for several hours (two were there in mid-afternoon), and drinking a "couple of cases" of beer. We are inclined to feel that appellant was in dire need of the admonition whether he knew it or not.

As it developed, Loma Leah Davis admitted that she and the decedent had been bootlegging in order to get enough money to pay for their new house, and that this was the source of the trouble between them. She says she wanted to quit the bootlegging or leave him, and that he was afraid of losing his job as a result of the

prosecution pending against them. Appellant contends all of this was irrelevant and prejudicial but that he was forced to bring it out after the Commonwealth had injected the subject in the manner we have outlined above. But in our opinion it was not irrelevant. The evidence was sufficient to support a reasonable inference that all three of them were participating directly or indirectly in the illegal sale of beer on premises owned by the Davises and occupied by appellant and that this circumstance was at least a partial or contributing factor in the killing of Davis, whether it was done in self-defense or otherwise.

At this point of the discussion we may as well comment on the prosecutor's closing summation to the jury, in which he said appellant "was getting along pretty well bootlegging, except getting caught a time or two, so he didn't like that." There was nothing in the testimony to suggest that appellant had been "caught a time or two" and certainly it would not have been competent had it been offered. It was also the theory of the Commonwealth's Attorney, and he stated it as his personal belief, that Davis never had a gun in his hand before he was shot, that appellant and Loma Leah called him to the door and shot him down in cold blood so that he would not break up their profitable bootlegging business, and that they planted the gun found in his dead hand afterward. All of this we consider to be beyond the bounds of a proper argument based upon the evidence and reasonable inferences to be drawn from it. "The attorney may properly argue the evidence to the jury and may properly argue what the evidence shows, but he should not state to the jury his personal beliefs not based on the evidence in the case." Winkler v. Commonwealth, 229 Ky. 708, 17 S.W. 2d 999, 1000 (1929).

Counsel for appellant did not raise any timely objection during the course of the closing argument, so we do not reverse on that ground. But lest it occasion a mis-

trial this type of argument should not be made again.

■ The witness Herschel Alexander, who left the scene just before the shooting, was put on the stand by the Commonwealth and apparently did not testify to suit the prosecution. Without any motion by the Commonwealth the trial court declared him to be a hostile witness and, over objection, permitted leading questions on direct examination. Since he never did say anything damaging to appellant, this action was not prejudicial. Nevertheless, there is nothing in the transcript to suggest that he was hostile or evasive, and if upon a retrial his testimony is substantially the same he should not be so considered.

■ Appellant contends in substance that the evidence was not sufficient to justify a conviction. It is a fundamental principle, however, that if one person admits having killed another intentionally but in justifiable self-defense the jury need not accept his excuse, and may find him guilty of murder or manslaughter notwithstanding. Cf. Baker v. Commonwealth, Ky., 322 S.W.2d 119 (1959); Spencer v. Commonwealth, Ky., 349 S.W.2d 841 (1961).

At the conclusion of all the testimony the jurors were sent to the scene of the shooting for a view in the presence of the appellant, the trial judge, the sheriff, and some of the lawyers. While they were there the judge directed the sheriff to point out certain things to the jurors, including the place on the ground where on the morning after the shooting he had found two cigarette lighters, some hair, and marks of a scuffle. It so happens that appellant had described the scrimmage between the Davises as having occurred at a different place in the yard from that at which the sheriff testified he observed these marks of combat, and different also from the spot at which Loma Leah said it took place. The exact location could not, of course, have made a great deal of difference in itself, but it became of importance as it bore on the credi-

bility of appellant's version of the fatal events. To illustrate the point, we quote as follows from the closing speech of the Commonwealth's Attorney:

> "This Defendant tells this Jury that he came out without a gun and was setting astraddle of his sister, where? In front of the old house? No sir, between the old house and the new house where Steve Davis lived. One says he came out with a gun, one says he didn't. One says he had her down in front of the old house, in the yard in front of the old house, right in front of the porch and one says he had her down between the old house and the new house. This Jury has been out there and there is a good little distance between those two places. The truth is easy and simple to follow, but when you spin a web of lies, you are going to get trapped."

■ In Underwood v. Commonwealth, 119 Ky. 384, 84 S.W. 310, 312, 27 Ky.Law Rep. 8 (1905), it was said that the trial court may in its discretion conduct the trial at the scene of the alleged crime. That may be so, but a jury view is not to be equated with the reception of evidence, which always is subject to the procedural safeguards of examination, cross-examination, and rebuttal testimony. This was not an instance in which the court chose to hear the testimony of witnesses at the scene.

In the few criminal cases in this jurisdiction in which the problem has arisen the court found the particular occurrences to have been non-prejudicial. In Underwood v. Commonwealth, 119 Ky. 384, 84 S.W. 310, 27 Ky.Law Rep. 8 (1905), for example, it was the defendant himself who supplemented his testimony at the scene. In Young v. Commonwealth, 245 Ky. 570, 53 S.W.2d 963 (1932), at a view conducted prior to the reception of evidence, two officers endeavored to point out a wall at which the accused was made to stand following his arrest. The matter was clarified in subsequent testimony, and there was no dispute concerning the location of the wall. Nei-

ther did it become in any way material to the issues of the case. In Roberts v. Commonwealth, 301 Ky. 294, 191 S.W.2d 242 (1945), it was held that the features of a small restaurant pointed out to the jurors by the sheriff were things they would have seen anyway.

It has been made abundantly clear in civil cases that what is observed in the course of a jury view is not evidence. "It is the place, and the place only, that the court is authorized to send the jury to see." Meier v. Weikel, 59 S.W. 496, 22 Ky.Law Rep. 953 (1900). "The purpose of the view is not to supply evidence, but to present the physical facts in order that they [the jurors] may understand the situation and appraise and apply the evidence in a more intelligent way." City of Somerset v. Guffey, 248 Ky. 415, 58 S.W.2d 606, 607 (1933). "In this state, that purpose is to enable the jurors better to understand and weigh the evidence adduced in the court room. * * * What is observed by them in the course of the view is not evidence." Commonwealth, Dept. of Highways v. Hackworth, Ky., 400 S.W.2d 217, 220 (1966). See also the recent case of Juett's Adm'x v. Calhoun, Ky., (1966), in which it was held that chalk marks indicating cracks on the walls of a house that had been damaged by nearby blasting operations conveyed a message and were prejudicial to the defendant.

■ There is no reason for any difference in this respect between civil and criminal proceedings. KRS 29.301, the statute applicable to civil trials, contemplates that the judge will not accompany the viewing party, and it provides that "no person" other than the officer in charge "shall speak to them on any subject connected with the trial." The criminal statute, KRS 29.268, requires the judge, the defendant, and counsel for each side to attend, but like KRS 29.301 it authorizes only "the place" to be shown the jury and provides in no uncertain terms as follows (emphasis added): "The officers must be sworn to suffer *no person* to speak to, or communicate with, the jury on any subject connected with the trial, *nor do so themselves,* but shall *merely show the place to be viewed,*" etc.

A principal reason for the position taken by this court on the subject of the jury view is that a reasonable and effective right of appeal demands all things of importance in the course of the trial to be kept within reach of a tangible and visible record that can be reviewed by the appellate court. Cf. Pierson v. Commonwealth, Dept. of Highways, Ky., 350 S.W.2d 487, 489 (1961).

■ In view of the conflict in evidence concerning the place at which the scuffle between the Davises took place, and its consequent significance with regard to the credibility of the defense testimony in general, we hold it was prejudicial error for the trial court to permit the sheriff in effect to supplement his testimony during the course of the view.

■ We deem it immaterial that associate counsel for appellant did not object at the scene (his principal counsel promptly objected and moved for a mistrial when he was advised of the incident upon return of the viewing party to the court house). As pointed out in Collins v. Sparks, Ky., 310 S.W.2d 45, 48 (1958), when the trial judge himself initiates an action or makes a comment in the presence of the jury, counsel may not be in a position to make a challenge forthwith without aggravating the harm already done. He cannot afford to become engaged in a tilting match with the court itself. A "trial judge is charged with the knowledge that his conduct during a trial before a jury, other than rulings or decisions, is reviewable if preserved in the motion for a new trial." Ibid. That precept, though so pronounced in a civil case, is no less applicable in a criminal trial.

■ In closing, perhaps it is well to reflect that this same principle underlies the ancient tradition of our courtroom practice in this state that it is best for the judge

to leave the trial of a case to the lawyers unless and until they get out of hand. On several occasions in this instance the learned trial judge volunteered questions and comments to which appellant at times was hard put to make exception. This was entirely unnecessary. Both sides were represented by excellent counsel, and they did a splendid job of examining the witnesses. With the possible exception of the precautionary admonition to which we have heretofore alluded, they certainly did not need any unsolicited help from the bench.

The cause is reversed with directions for a new trial.