**Tommy TAYLOR, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 20, 1966.

Rehearing Denied July 1, 1966.

Fritz Krueger, Somerset, for appellant.

Robert Matthews, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

A jury found Tommy Taylor guilty of violating KRS 433.190, in that he broke and entered a tobacco barn with intent to steal tobacco belonging to Commodore Dykes from the barn. This appeal is from the judgment imposing sentence of imprisonment for two years pursuant to the jury's verdict.

The three questions on appeal, as stated by appellant in his brief, are:

"1. Whether a search made by officers who were on the appellant's premises wrongfully and without any warrant was illegal?

"2. Whether the trial Court participated—by its questions and comments on rulings—in the prosecution to an extent and in a manner that prejudiced the rights of the appellant to a fair trial?

"3. Whether the trial Court erroneously overruled the appellant's motion for a peremptory instruction?"

The alleged theft occurred during the night of December 4, or early morning hours of December 5, 1964. Dykes said that about "eleven dozen" hands of tobacco had been stolen from the barn in which he had his tobacco housed. Dykes, in company with Pulaski County Sheriff Phelps and State Detective King, examined the crime scene on December 5. They discovered three sets of footprints in the soft earth in the barn area; also observed by them were some hands of tobacco and crumblings of tobacco which appeared to have fallen off other hands of tobacco taken from the barn.

Dykes and the officers related that they were able to follow the trail of footprints and tobacco particles from the barn to the home of appellant. The footprints were described as indicating that an adult man and a boy and girl (or two boys) had made them.

The appellant was not at home when Dykes and the officers arrived there. After some conversation with appellant's wife, Dykes went into a small shed situated on a hill back of appellant's dwelling. Dykes testified that he found some of his tobacco in the shed, concealed beneath some other tobacco. The officers said that they did not enter the shed until after appellant had come on the scene, although they said they could see tobacco in the shed, merely by viewing it from the outside.

Dykes and the officers had not been on appellant's premises long until appellant arrived there. Appellant disclaimed any knowledge of the presence of any tobacco on his place, and told the officers he had no objection to their making a search about the premises. Then the officers entered the shed and uncovered the Dykes tobacco which had been hidden from view by other tobacco piled on it. A hand of the Dykes tobacco found in the shed was exhibited to the jury along with a hand of Dykes' tobacco which had not been stolen. Similarities of the "tie" on these hands was spoken of

in the evidence (and was visually before the jury via the physical presentation of the hands of tobacco).

Appellant continued to disclaim all knowledge of the tobacco, or how it came to be in his shed. He offered to give Dykes $30.-00, plus the "non-Dykes" tobacco in the shed to let the matter drop. Dykes declined the offer.

A witness testified to having been aroused by the barking of his dogs at or about the time of the theft. The witness saw two people, apparently with tobacco, but he could not positively identify them, although he said positively that appellant was not one of the persons he saw. The appellant offered no evidence in his behalf, but made a timely motion for a directed verdict of acquittal, which the trial court overruled.

■ It will be observed that appellant's attack on the legality of the search relates to the "search made by officers." No complaint is made respecting the search made by Dykes, victim of the theft, and a private citizen. The simple answer to appellant's assertion of error about the search is that the officers testified that appellant consented to it. Their testimony in this regard is entirely unimpeached. This case is not governed by Johns v. Commonwealth, Ky., 394 S.W.2d 890. In *Johns* the purported consent was reluctantly given after Johns had been placed under arrest; additionally, the search there had no reasonable relationship to the purpose of the arrest. In the present case the officers informed appellant that their purpose was to locate tobacco stolen from Dykes—appellant, purportedly for the purpose of demonstrating his own innocence, knew what the object of the search was and consented to it. There is no showing that any coercion was employed to obtain the consent.

It should be further noted that Dykes had discovered the stolen tobacco anyway, and no objection was made to the legality of the search by him; neither is there any presentation on this appeal of any claim that the search by Dykes was improper. Therefore, the evidence of the officers as to what was revealed by the search was simply cumulative of the unchallenged testimony from Dykes, and had it been erroneous, it may be doubted whether it could be considered prejudicial. RCr 9.24. Accordingly, we conclude that there is no merit in the claimed error respecting the search by the officers.

■ As to the claimed error relating to improper participation by the trial judge, we need say only that we have reviewed fully the transcript and are not persuaded that the court's participation in the trial warrants the view that it was prejudicial to the appellant. In any event, the record discloses that appellant made no objection to the court's conduct, nor did he request any affirmative or curative relief during the trial regarding the matters of which he now complains. In these circumstances the alleged error, if any, is waived. Young v. Commonwealth, Ky., 335 S.W.2d 949.[1]

■ Finally, it is contended that the evidence did not warrant submission of the case to the jury, and that a peremptory instruction for acquittal should have been given. We view that contention as untenable in light of the record. Without undertaking a detailed itemization of the circumstances pointing to appellant's guilt of the offense, we note the following factors which we deem sufficient to sustain the verdict: Appellant knew of the tobacco's being housed in the barn, and made inquiry as to whether it had been hauled away on the very day of the offense; the tracks and trail of tobacco particles led to appellant's premises, the stolen property was found on appellant's premises, suspiciously concealed, and in face of appellant's contention that he

1. The alleged misconduct of the trial judge here did not approach the "palpable error" status so as to obviate the necessity for objection. See Collins v. Sparks, Ky., 310 S.W.2d 45; Barnett v. Commonwealth, Ky., 403 S.W.2d 40 (Dec. May 20, 1966); 5 Am.Jur.2d, Appeal and Error, Section 622.

had no tobacco on the place. Appellant made an offer of compromise despite his assertion of innocence. This offer, of course, was not conclusive, but it affords substantial basis for an inference of guilt. The witness who testified that he did not see appellant at the crime scene when aroused by the barking dogs did say that the two persons he saw, he believed to be appellant's children. The tracks indicated that three persons were participants, and one set of tracks clearly supported the inference that they were made by an adult. The negative testimony of the witness that he did not see appellant can hardly support the conclusion, as a matter of law, that appellant was not present. See Hoskins v. Commonwealth, Ky., 374 S.W.2d 839, and cases therein cited, for the views of the court as to sufficiency of circumstantial evidence to sustain a conviction. It is our view that the evidence here is quite substantial and adequate to sustain the verdict.

The judgment is affirmed.