## Young v. Commonwealth.

(Decided October 28, 1932.)

H. M. DENTON, CLARENCE SANDERS, J. B. GATHRIGHT, and CHARLES A. COMSTOCK for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Near the middle of the day of April 12, 1932, the appellant, John Young, shot and killed Edward E. Parr, a policeman in the city of Louisville, and which occurred in the second story of a flat at 220 East Market street, in that city. He and three others (Delbert Masterson, Della Yeley, and Alpheus Sampson) were later jointly indicted, in which they were accused of murder. On separate trial of appellant he was convicted and punished with death. His motion for a new trial was overruled and from that order and the judgment pronounced on the verdict he prosecutes this appeal. The argument of his counsel for a reversal of the judgment is made under three headings contained in their brief, which are: (1) "The verdict is against the law and the evidence and is the result of passion and prejudice;" (2) "Statements made to jury at scene of trag-

edy in absence of appellant;'' and (3) "A judgment of conviction shall be reversed for any error of law appearing on the record, when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby.''

Counsel in discussing some of those headings travel a wider range than what they would appear to embrace, but in the course of this opinion we will endeavor to notice every objection made by counsel. Some of the points argued are not properly presented, because not relied on in the motion and grounds for a new trial, and some of the complained of evidence was not objected to at the time of its introduction, nor was any motion made to exclude it. However, because of the gravity of the punishment we have concluded to treat all of the matters discussed as if they were duly presented under prevailing rules of practice for that purpose. Preliminary to the discussion of all the arguments, and especially the one in support of heading (1), a synopsis of the substantial testimony given upon the trial will be made.

Some of the evidence of the commonwealth, to which there was no objection, developed that appellant was on parole after serving some years of a sentence for robbery, and he himself at the solicitation of his counsel testified that he had recently participated in four "stick-up" jobs, and two "high jacking" jobs, of which the deceased, Edward E. Parr, and other members of the city police force had knowledge. They received information that appellant could be located at 220 E. Market street, and four officers, one of whom was the deceased, repaired to that place near noon of the fatal day. Deceased and his fellow policeman, Fawbush, went to the front of the building, while officers Doerting and Mulligan located themselves at its rear. The occupied apartment in which appellant was supposed to be was in the second story with a rear stairway leading to the ground. Deceased and Fawbush rang the doorbell and the door was opened by Sampson. There was an inside contrivance by which a buzzer could be set in motion which was located in the rear of the apartment, but the sound of which could not be heard by one located at the front, and Sampson or Della Yeley, his codefendants, touched the button that operated the buzzer, the latter having left the kitchen in

which the four of them were located when the doorbell rang.

When Della Yeley appeared at the door, the deceased expressed a desire to look through the building, and she consented to it and went along with him. It is unnecessary to describe the rooms of the apartment in detail, it being sufficient to say that from the kitchen, directly or through another room, there was a door to a back porch, and, when the tenant (Della Yeley) left to go to the front door, appellant and Masterson went out on it. When they heard her returning and talking to some one, who was the deceased, they entered the room in which those two had arrived, upon which deceased ordered Masterson, who entered the room first, to hold up his hands. He was then searched by deceased who took a pistol from him. As the pistol was being lifted by deceased from the pocket of Masterson appellant spoke and said: "Wait a minute," and which caused deceased to turn his head and face slightly toward appellant, who then had in his hand his pistol pointed at deceased, and immediately fired a bullet into his body, inflicting a fatal wound, and which caused him to fall to the floor, and other shots were fired into his body by appellant after the fall.

The shooting attracted the attention of Mulligan, who ascended the rear flight of steps and about the time he got to the top of it, Masterson and appellant were making their exit from the room in which the murder was committed, with the view of making their escape from the rear of the apartment, and, in order to clear the way of escape, appellant shot and killed Mulligan also, his body rolling down the steps to a point near a garage, the building being located on an alley. The other officer, Oscar Doerting, who was stationed at the rear, came upon appellant and Masterson after both of his fellow officers had been killed, and he drew two pistols upon them (one in each hand) and made each of them hold up their hands against a brick wall conveniently located. While he held them in that position a citizen passed along and offered his services to the arresting officer, when he was instructed to search them, which he did, and took from appellant his weapons.

The defendants, Yeley and Masterson, were the only eyewitnesses to the killing and they described the way and manner in which it occurred exactly as we

have stated it.    Defendant in his testimony did not qualify their testimony, except in one particular, when in detailing the facts under which he shot deceased, he said: ''This man (deceased) had his right hand in his overcoat pocket and he says Get them up.   When he said that Masterson raised his hands about like that. When he did Masterson's gun was sticking out here and he reached and got Masterson's gun and when he did that I said Wait a minute.   When I said that he wheeled around and said What is that? and started to draw his gun and then when he did that I shot.''   He stated that the officer was then about two feet from him and the shot powder burned the overcoat the officer was wearing in the pocket of which he carried his unfired pistol.

Defendant claimed not to know that deceased was an officer, nor did he suspect that he was one.   On the contrary he stated that his impression was that the officer was one of a group of highjackers with whom he had come in contact on a recent previous occasion and to which class of criminals he acknowledged he belonged.   However, there was evidence tending to show that appellant knew that deceased was an officer, a fact which his codefendants admitted that they knew, and the statements of appellant after he was arrested substantiates the belief that he also knew that fact, and that he falsified when he stated to the contrary in his testimony.   The detailed statements of each and every witness (all of which dovetails toward the substantiation of the synopsis of the testimony that we have given) need not be recited, since none of it detracts from, but all of it confirms, the synopsis as herein above made.   It will be perceived that the actual killing of deceased by appellant was not only proven by his co-defendants in the indictment, but was admitted by him, but with the given qualifications, which his counsel insist justified the homicide upon the ground of self-defense, and, because the jury rejected that description of the killing as given by appellant, the whole argument in support of heading (1) is made.

It is not unnatural for loyal counsel to become biased in favor of his client and to take a somewhat distorted view of the testimony; but, after making due allowances therefor in this case, it is still difficult for us to fully comprehend the apparent seriousness of counsel in making the argument now under consideration. They even say in their brief that the witnesses, Yeley

and Masterson, fully corroborate appellant as to how the killing occurred, when the fact is that each of them stated in unqualified terms that the shooting of deceased by appellant was at a time when the former was searching Masterson and did not have his body turned in the direction of appellant, and said no word to him, except the general command to both of them to "Hold up your hands," and that appellant then shot deceased in the manner we have hereinbefore described, as it was told by those witnesses. Surely, it requires an exceptional amount of bias for that argument to be sincerely made. We, therefore, conclude that counsel is in error in making the contention, and that his argument in support thereof cannot be accepted.

After the opening statement to the jury by the commonwealth's attorney, he made a motion that the jury view the premises, which was sustained, and the jury, in charge of sworn officers, with the court, defendant, and counsel for both sides, went to the scene, and while there (and with appellant only about fifteen feet away with his counsel and the court nearby), one of the jurors asked an officer in charge of them which wall it was that the arresting officer made defendant and his companion stand up against. The officer designated the one which he thought was the one inquired about; but he appears to have been mistaken and another who was present corrected him, whereupon the court immediately stopped the inquiry and then and there warned the jury and the officers, in substance, that no such questions could be asked or answered.

Upon the return to the courtroom, counsel for defendant moved to discharge the jury because of the incident to which we have referred. The court overruled the motion, but admonished the jury in these words: "Gentlemen of the jury, you will disregard entirely any observations made to you at the scene of the tragedy by anybody, no matter who. The law requires that no one should make any observations to you or talk to anybody about it, and you should therefore disregard entirely anything that anybody may have said up there about the premises, the location or position of any of the individuals at the time or immediately after the tragedy. The purpose of the law in having you see the place is simply to let you view the scene of the tragedy in order that you may better apply

the evidence that may be given in regard to it in open court.''

It is argued in support of heading (2) that the very immaterial occurrence of which complaint is made was so grievously detrimental to appellant's substantial rights that a new trial should be granted, regardless of the extent of appellant's guilt as proven by the almost uncontradicted testimony in the case. Surely, the administration of the criminal law has not yet reached the stage where such immaterial and non-prejudicial matters may be exaggerated and enlarged into an error of such substantial weight and potency as would authorize the reversal of a verdict of conviction, in view of the provisions of section 340 of the Criminal Code of Practice; for, unless the error complained of is one of such magnitude, we are not authorized under that section to reverse the judgment therefor. Moreover, the witness who testified in the case, following the occurrence complained of, designated in his testimony the wall that was pointed out by the second person who spoke with reference thereto while the premises were being viewed and no one, not even defendant, denied his statement. It was thereby made to appear that appellant, by not denying that testimony of the officer, confessed and admitted that the complained of statement made on the premises was true. Yet, in the face of that inevitable conclusion, it is most seriously contended that the matter complained of was most fatal to a fair and impartial trial. In addition thereto, the court admonished the jury in most emphatic and unambiguous terms to not consider what had occurred at the scene of the homicide on the visit of the jury to view the premises. Furthermore, the appellant was only about fifteen feet removed from the parties who participated in the conversation complained of, and which seems to have been heard by every one present within that distance, except appellant himself. The inference is strong that he also heard it, and, if it had been most material and he did hear it, it was neither erroneous nor prejudicial under the rule announced by this court in the case of Underwood v. Commonwealth, 119 Ky. 384, 84 S. W. 310, 27 Ky. Law Rep. 8, where an exact similar occurrence was involved, and the trial court disposed of it in similar fashion and which we approved.

In rejecting its effect as contended for by counsel

for appellant therein, we said: "We are able to see no reason why the judge should not have tried the whole case at the place where the tragedy occurred, if it suited his convenience so to do. There is no peculiar sanctity about the courtroom which requires trials to be held there. The courtroom is for the convenience of the court, but there is no reason that forbids the judge, in hot weather, for instance, to hold his court out in the yard under a tree, or any other place which better suited his convenience and the comfort of the jurors and the parties litigant." Other cases substantiating the non-prejudicial effect of the occurrence complained of could be cited, but what we have said we deem amply sufficient for that purpose. Under this heading complaint is also made that the court erred in sustaining the motion for the jury to view the premises, but that contention is so at variance with the Code provision (section 236 Criminal Code of Practice) and numerous opinions of this court dealing with the practice, that it will not be lengthily discussed.

It also is argued in support of heading (3), that the court erred in permitting the commonwealth to introduce a map of the premises where the homicide occurred after its accuracy had been established by the engineer who made it; that it erred in admitting photographs of the premises, the accuracy of which was established by the photographer who made them, and likewise erred in admitting a picture of the dead body of deceased, showing the location and number of the wounds that had been inflicted thereon by appellant. Complaint is also made under this heading that policemen were allowed to be and remain in the courthouse during the trial, or portions thereof. No relevant case is cited in support of either of those arguments. On the contrary, we held in the cases of McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100; Elmendorf v. Commonwealth, 171 Ky. 410, 188 S. W. 483; Alder v. Commonwealth, 215 Ky. 613, 286 S. W. 696, and Bowling v. Commonwealth, 230 Ky. 387, 19 S. W. (2d) 1086, that photographs of such objects, after shown to be true representations, were competent evidence, and such is the declared rule everywhere so far as we have been able to discover. It is shown that only two or three policemen were in the courtroom during the trial, and, perhaps, some of them were witnesses. But, whether so or not, there is no contention that they

said or did anything, or acted in any manner, to show any feeling against appellant or any undue interest in his conviction, or otherwise deported themselves in any manner other than as quiet spectators. Again we repeat, that the practice employed in the administration of the law has not so degenerated as that an officer thereof may not attend a trial, or that, if he does so, his presence thereat will be fatal to a fair and impartial one.

Finally, it is argued in support of this heading that the court erred in permitting appellant to be handcuffed, except during the progress of the trial in the courthouse, i. e., that he was so manacled in being brought from the jail to the courthouse and when he went with the jury to view the premises. A different question might be presented if the court had required the appellant to be so manacled during the progress of the trial, but, when he was out of the courthouse upon the streets, or upon the commons, in the light of the magnitude of the offense and the proven character that appellant had built for himself, prudence necessarily required that such precaution should be taken, not only for the purpose of preventing his escape, but also to prevent him in his desperation from possibly repeating the crime for which he was on trial, and we have been cited to no case holding such precautionary measure prejudicial when so circumscribed.

Complaint was made of the instructions in the motion for a new trial, but it is not referred to in brief. However, we have examined the instructions and find them to cover every phase of the case and in some respects more favorable to appellant than he was entitled to. The issues submitted by them are clearly and succinctly stated in language easy of comprehension and embodying all of the elements necessary to a conviction, as well as a correct submission of defendant's theory of justification.

This court is composed of individuals who, like others, cannot suppress sympathy for one in appellant's predicament; but he is the architect thereof, having of his own volition adopted the course that he desired to and did pursue. Nevertheless, he is entitled to all of the safeguards that the law throws around an accused citizen. We have seen that he got the benefit of them in this case. The rights of society as well as those of

appellant are involved and are also to be protected, and to that end all forms of governments following the promulgation of Moses at Mt. Sinai has required of each and every one of its citizens that "Thou shalt not murder." If that law is violated, the one guilty of it has no right to demand more than a fair trial, and if, as a result thereof, the severest punishment for the crime is visited upon him, he has no one to blame but himself. Being convinced that appellant had such a trial, we are without authority to disturb the sentence pronounced upon him simply because it is the severest one known to the law.

Wherefore, perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.

The whole court sitting, except Judge Willis, who was absent.