Belknap
No. 80-257

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH GILBERT

April 17, 1981

*Gregory H. Smith*, acting attorney general (*Paul J. Barbadoro*, attorney, on the brief and orally), for the State.

*Bjorn R. Lange*, public defender, of Concord, on the brief and orally, for the defendant.

BOIS, J. This is an appeal from the defendant's conviction of conspiracy to commit aggravated felonious sexual assault, RSA 629:3 I. We must decide whether the trial court abused its discretion by allowing the defendant to be held in handcuffs in the presence of the jury during a view in the county jail, whether the court erred in admitting into evidence certain statements which the defendant argues were inadmissible as hearsay or as out-of-court statements by an absent witness, and whether there was sufficient evidence to support the jury's verdict. We find no abuse of discretion, no error by the court regarding the admissibility of evidence, and sufficient evidence to support the finding of guilt. We therefore affirm.

On January 4, 1980, the grand jury indicted the defendant, Joseph Gilbert, for conspiracy to commit aggravated felonious sexual assault. The indictment alleged that the defendant and Michael McKenery had conspired "in the form of a trial, so-called" to commit the crime against Paul J. Newlin. The indictment further stated that the defendant and McKenery had participated in the "trial," at which "Newlin was sentenced to perform acts of sexual penetration against his will." The indictment alleged that the overt act in furtherance of the conspiracy had occurred on or about November 28, 1979, when McKenery purposely coerced Newlin "to submit to sexual penetration by Joseph Gilbert at the Belknap County Jail by threatening physical violence against Paul J. Newlin," and that Gilbert then "performed an act of sexual penetration" on Newlin, with the knowledge that Newlin was consenting only as the result of the threats and not of his free will.

Prior to any testimony at the trial, the jury was taken on a view to the county jail. The Trial Court (*Batchelder*, J.) ordered that the defendant be held in handcuffs at the view. The transcript includes the minutes of a meeting or conference between counsel and the court held in chambers the day following the view. That record discloses that the bailiff had been concerned with the close proximity between the jurors and the defendant at the "very confined area of the view," and considering the "very violent background" of the defendant, which included three convictions of aggravated assault, he had, for security reasons, requested that the court order that the defendant be handcuffed. The judge also noted

for the record that he had sentenced the defendant for one of these previous aggravated assaults, wherein he had been aware of a physician's opinion that the defendant was a stable individual, and on the other hand also aware of a probation department report which indicated that the defendant was "irresponsible, dangerous, was beyond rehabilitation and should be confined." The defendant's only objection taken, exception noted and reserved, was to the court's order that the restraints be placed on him.

At the trial, the superintendent of the jail testified under cross-examination by the defendant's counsel that he had not received any complaints of sexual misconduct during November and December of 1979. On re-direct examination, the superintendent testified that one of his prisoners, Paul J. Newlin, on January 9, 1980, had reported to him an incident involving sexual misconduct. The defendant objected to the introduction of this evidence on the ground that it was hearsay.

Paul J. Newlin, the alleged victim of the sexual assault, testified at trial that on November 26, 1979, he was confined as a prisoner in the left block of the Belknap County Jail with five other prisoners, including McKenery and Gilbert. He further testified that the other five prisoners held a "trial" in late November 1979, to determine whether Newlin was "someone who was giving statements against people," "a rat." At the conclusion of this mock "trial," Gilbert, McKenery, and another prisoner found Newlin guilty and sentenced him to no cigarettes, confinement to his cell, cold showers, and the loss of some of his food. The State offered evidence through Newlin that McKenery had told Newlin three or four days after the "trial" that the sentence also required Newlin to perform fellatio on two or three people. The defense objected to the admissibility of this evidence on the ground that this statement was hearsay. After a hearing outside the presence of the jury, the trial judge overruled the objection, ruling that the statement was admissible because it was a statement of a co-conspirator.

The defendant argues that the trial judge's ruling that he be held in handcuffs at the view in the presence of the jury abridged his constitutional right to a fair trial, impaired the presumption of his innocence, and was an abuse of judicial discretion constituting reversible error. We note that the issues relating to the physical restraint of a defendant at a view are of first impression before this court.

In one of his discourses, Sir Edward Coke cited Bracton, the medieval jurist of thirteenth century England, as saying: "If felons come in judgments to answer, they shall be out of irons, and all manner of bond, so that their pain shall not take away any manner

of reason, nor them constrain to answer, but at their free will." 3 E. COKE, INSTITUTES OF THE LAW OF ENGLAND 34 (London 1809). *See generally* Krauskopf, *Physical Restraint of the Defendant in the Courtroom*, 15 ST. LOUIS U.L.J. 351, 351–55 (1971). This early common law right of a criminal defendant to appear in court free of any restraints has likewise become the rule in this country. *State v. Roberts*, 86 N.J. Super. 159, 162–63, 206 A.2d 200, 202 (1965).

Many courts, however, have held that "[a] defendant may be shackled when there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the trial." *People v. Boose*, 66 Ill. 2d 261, 266, 362 N.E.2d 303, 305 (1977) (citing *Kennedy v. Cardwell*, 487 F.2d 101, 105 (6th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974); *Woodwards v. Cardwell*, 430 F.2d 978, 982 (6th Cir. 1970), *cert. denied*, 401 U.S. 911 (1971); *Commonwealth v. Brown*, 364 Mass. 471, 475, 305 N.E.2d 830, 834 (1973)); *see* 3 ABA STANDARDS FOR CRIMINAL JUSTICE 15-3.1(c) (1980); *cf. Illinois v. Allen*, 397 U.S. 337, 343–44 (1970). *See generally* 1. R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 701 (1980); Annot., 90 A.L.R.3d 17 (1979). The trial judge is vested with the discretion "to meet the circumstances of each case." *Illinois v. Allen*, *supra* at 343; *see, e.g.*, *Kennedy v. Cardwell*, *supra* at 110; *People v. Boose*, *supra* at 266, 362 N.E.2d at 305. "If the trial judge orders such restraint, the judge should enter into the record of the case the reasons therefor." 3 ABA STANDARDS FOR CRIMINAL JUSTICE 15-3.1(c) (1980); *see People v. Boose*, *supra* at 266, 362 N.E.2d at 305; *People v. Duran*, 16 Cal. 3d 282, 291, 127 Cal. Rptr. 618, 624, 545 P.2d 1322, 1328 (1976).

██ ██ This case differs factually from most of the cases involving the use of physical restraints because the defendant in the case at bar was not restrained while present at the courtroom trial, but was handcuffed while on a view at which the jury was present. In this jurisdiction, the trial court has the discretion to allow a view, RSA 519:21, and the "[i]nformation that a jury obtains from a view is evidence which it is authorized to use in reaching a verdict." *Chouinard v. Shaw*, 99 N.H. 26, 27, 104 A.2d 522, 523 (1954); *see State v. Booton*, 114 N.H. 750, 757, 329 A.2d 376, 382 (1974), *cert. denied*, 421 U.S. 919 (1975). We conclude that the potential prejudice which may inhere in having the accused present before the jury at a view requires that the issue of physical restraint at a view be subject to the same analysis as that accorded to physical

restraint of defendants at a courtroom trial. *See Young v. Commonwealth*, 245 Ky. 570, 578, 53 S.W.2d 963, 966 (1932).

■ The defendant concedes that "[t]he trial court undoubtedly has the authority to keep a defendant manacled at the view" but argues that the trial court abused its discretion by failing to give sufficient deference to the defendant's right to appear before the jury without handcuffs. Our inquiry into the record indicates that the trial judge had before him substantial evidence upon which to base his conclusion that the circumstances were so extraordinary that they warranted the restraint of the defendant. The record demonstrates that the bailiff had informed the trial judge prior to the view that the defendant and jury would, because of the physical layout of the site of the view, be brought into close proximity in a very confined area. Furthermore, the judge properly based his decision on the knowledge of specific instances of violent crime for which the defendant had been convicted. *People v. Boose, supra* at 266–67, 362 N.E.2d at 305; *Commonwealth v. Brown, supra* at 479 n.18, 305 N.E.2d at 836 n.18. We agree with the State that the confined area at the view at the county jail, together with the defendant's record of violent conduct, provided the trial judge with sufficient justification to order that the defendant be placed in handcuffs for this limited time.

■■ Regarding the defendant's argument that he was prejudiced because the jury saw him in handcuffs at the view, we recognize that the sight of the accused in handcuffs alone might interfere with the presumption of the defendant's innocence and that, therefore, courts should impose restraints or shackles on defendants only in cases of evident necessity. *See Kennedy v. Cardwell, supra* at 111. "The use of restraints is not 'inherently unfair,' however, because the adverse effect may be an unavoidable consequence of protecting an important state interest—such as safety in the courtroom. Therefore, the defendant must show that the practice was prejudicial in his case—that is, was not necessary to protect an important state interest." *Williams v. Estelle*, 500 F.2d 206, 209 (5th Cir. 1974), *rev'd on other grounds sub nom. Estelle v. Williams*, 425 U.S. 501 (1976). In the case at bar, we believe that the danger of possible prejudice was substantially diminished by the fact that the jury would learn through evidence at trial that the defendant was, in fact, a prisoner at the time of the alleged offense, said to have been committed within jail walls. "No prejudice can result from seeing that which is already known." *United States ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir.), *cert. denied*, 411 U.S. 971 (1973). Accordingly, we conclude that the

jury's observation of the handcuffed defendant, an individual who was charged with a violent crime committed in a jail facility, did not prejudice the jury against him, if at all, in a way significant enough to overcome an important State interest so as to warrant a new trial.

We uphold the trial court's exercise of discretion in the present case. We reiterate, however, that in the interest of fairness, a defendant should not be subjected to physical restraints of any kind while in the jury's presence unless there is a showing of manifest need. The trial court should conduct a *formal hearing* on the record prior to a view or a trial at which it is contemplated that a defendant is to be restrained. Restraints are to be avoided if possible, but if restraints are necessary, they should be as unobtrusive as is possible, although as effective as is necessary under the circumstances. When visible restraints are imposed, the court should, unless the defendant objects, *sua sponte* instruct the jury as to the presumption of the defendant's innocence and that such restraints should have no bearing on the determination of the defendant's innocence or guilt. *See generally* Annot., 90 A.L.R. 3d 17 (1979).

The defendant next argues that the court erred in allowing the victim, Newlin, to testify, under the co-conspirator exception to the hearsay rule, concerning certain statements made by McKenery to Newlin. In *State v. Colby*, 116 N.H. 790, 793–94, 368 A.2d 587, 590 (1976), we held that out-of-court statements by co-conspirators are admissible as exceptions to the hearsay rule "when [the statements are] made during the pendency of the criminal enterprise and in furtherance of the criminal object, as long as the existence of the conspiracy is sufficiently proved by independent evidence." *See* 4 J. WIGMORE, EVIDENCE § 1079, at 180 (Chadbourn rev. 1972); *Developments in the Law-Criminal Conspiracy*, 72 HARV. L. REV. 920, 984–88 (1972). The defendant specifically asserts that the State failed to meet this standard when it introduced Newlin's testimony that McKenery had told him that fellatio was also an element of the sentence imposed at the mock "trial."

We disagree with the defendant's contention because the transcript provides ample independent evidence that the underlying conspiracy existed when the contested statement was made. The victim of the sexual assault, and another perpetrator of the assault, testified that Newlin was forced to perform fellatio on the defendant and McKenery. The record further reveals that during the actual assault, when Newlin attempted to cease performance of the sexual act upon the defendant, McKenery forceably maneu-

vered Newlin's head, threatening to break his back if he refused to comply. Furthermore, that the participants at the "trial" were also participants at the sexual assault of Newlin was circumstantial evidence going to the issue of the relationship between the conspiracy to sexually assault and the "trial" itself. There was also circumstantial evidence to support the existence of a conspiracy in testimony concerning the circumstances surrounding the making of the statement to which the defendant now objects. Newlin testified that when McKenery informed him of the addition to his sentence, the defendant was standing close by the two men. We conclude that the cumulative effect of this evidence demonstrates that a conspiracy existed between the defendant and McKenery. Accordingly, we hold that the trial judge properly admitted McKenery's statement under the co-conspirator exception to the hearsay rule.

■ The defendant further asserts that the admission of the statement by the co-conspirator violated his right to confront the witnesses against him under the Sixth and Fourteenth Amendments to the Federal Constitution and under Part 1, Article 15 of the New Hampshire Constitution. He argues that under our holding in *State v. Larochelle*, 112 N.H. 392, 396–97, 297 A.2d 223, 226 (1972), the out-of-court declaration is admissible only if it is buttressed by sufficient "indicia of reliability" to justify the declarant's absence at trial. *See generally* Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 HARV. L. REV. 1378 (1972). Our examination of the record indicates ample "indicia of reliability" surrounding the McKenery statement to uphold the trial court's admission of the statement although McKenery was not present at trial. First, we note that there was extensive evidence, apart from the McKenery statement, that a conspiracy existed at the time the statement was made. Second, the transcript reveals another incident, prior to the sexual assault involved in this case, in which McKenery forced Newlin to perform fellatio on him. This would tend to demonstrate that McKenery knew that he could *force* Newlin to acquiesce to sexual conduct, thereby diminishing the possibility that the statement regarding the additional element of the sentence was fabricated in order to induce Newlin to have sex with him.

■ ■ The defendant also argues that the trial court erred in not excluding the testimony of the superintendent of the jail concerning the victim's report of sexual misconduct. We disagree with the defendant's contention that the statement was inadmissible

hearsay. It appears from the record that the statement elicited from the superintendent by the State on re-direct examination regarding Newlin's report of sexual misconduct was not admitted by the trial judge to demonstrate its truth or falsity but, rather, was admitted for the limited purpose of indicating that the statement was made. *See State v. Belkner*, 117 N.H. 462, 469, 374 A.2d 938, 942 (1977); *State v. Martineau*, 116 N.H. 797, 798, 368 A.2d 592, 594 (1976). Absent the inclusion of the judge's instructions to the jury in the record before us, we cannot decide whether the trial judge gave a sufficiently limiting instruction regarding the superintendent's statement.

Finally, we conclude that "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [the existence of a conspiracy] beyond a reasonable doubt." *State v. Kiluk*, 120 N.H. 1, 4, 410 A.2d 648, 650 (1980); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

*Affirmed.*

All concurred.