Rockingham
No. 83-510

### THE STATE OF NEW HAMPSHIRE

v.

### DEAN DAYUTIS

August 15, 1985

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J.   The defendant, Dean Dayutis, appeals his conviction of *second degree murder* and his sentencing by the Superior Court (*Nadeau,* J.). He raises five issues: first, that he is entitled to a mistrial because the prosecutor in his opening statement referred to evidence previously precluded by a court order; second, that the indictment should have been dismissed because the State did not present certain exculpatory evidence to the grand jury; third, that the trial court had no statutory basis for sentencing him to life imprisonment with a minimum term of not less than thirty-five (35) years; fourth, that the sentence was a violation of his State and federal constitutional rights; and fifth, that his State and federal constitutional rights were violated and that he is entitled to a new trial because he was seen by some of the jurors while he was in custody. We affirm on all other issues, but reverse and remand on the issue of an unconstitutional sentence.

In 1972, the defendant was a member of a motorcycle club known as the Devil's Disciples. On the weekend of June 12, 1972, he, along with other members of the club and their girl friends, drove to Loudon to attend motorcycle races held there. Members of Hell's Angels, a rival motorcycle club, also attended the races. At one point during the weekend, some members of both clubs engaged in a fight and one of the Disciples was injured.

At the end of the weekend, Nick Moccia, one of the Devil's Disciples, was driving south on Route 93 with the defendant and four

other passengers, when they noticed two motorcyclists, Robert Gardner and Kevin Gilroy, riding in the breakdown lane. After identifying them as members of Hell's Angels, the defendant asked one of the other passengers to give him two handguns, and then ordered all the passengers to put their heads down. Both motorcyclists were shot: as a result, Gardner was wounded and Gilroy was killed.

Three of the passengers in the car testified at trial that, although they heard the shots, they didn't see who fired the guns. The defendant was convicted of second degree murder and was sentenced to life imprisonment with a minimum term of not less than thirty-five (35) years.

The defendant first claims he is entitled to a mistrial because the State, acting in bad faith and in violation of a court order, introduced in its opening statement a chart listing several names, among them the name Hale, allegedly an alias used by the defendant. Prior to trial, the court had granted the defendant's motion *in limine*, precluding the State from introducing into evidence any allegations of "flight" on the part of the defendant, but granted to the State the right to make any additional offers of proof during trial before introducing evidence of flight or concealment. A few days later, the trial court granted the State's motion to reconsider the admissibility of evidence of the defendant's change of name.

The defendant argues that the State was on notice prior to its opening statement that there was an outstanding pre-trial order prohibiting evidence of the defendant's name change. At the time of the opening statement, however, the court had not yet ruled that the evidence of a name change was inadmissible.

■ The standard for reversible error in a prosecutor's opening statement is that the prosecutor must be shown to have acted in bad faith, the opening statement must be completely unsupported by the evidence, *and* the defendant must be prejudiced thereby. *State v. Booton*, 114 N.H. 750, 758, 329 A.2d 376, 382 (1974), *cert. denied*, 421 U.S. 919 (1975); 5 F. WHARTON, CRIMINAL LAW AND PROCEDURE § 2033 (Supp. 1974).

It is unclear whether or not the prosecuting attorney was violating a court order, since the question of the defendant's identification was still open and since the material objected to was supported by evidence the admissibility of which was still undecided.

■ The defendant, however, produced no evidence that he was in any way prejudiced by the reference to the chart listing the names of Hale-Dayutis. It is doubtful whether the jurors even associated any of the names on the list with the defendant. We conclude, there-

fore, that the trial court did not err in denying the defendant's motion for a mistrial.

The defendant next contends that the indictment should have been dismissed because the State failed to present certain exculpatory evidence to the grand jury. Before the grand jury hearing, the defendant requested that the prosecutor disclose the fact that Robert Gardner, the victim who survived the shooting, was unable to identify the defendant in an array of several photographs and that other witnesses to the incident may have suffered severe perceptual impairments. The court denied this request subject to exception. The defendant did not, however, move to dismiss the indictment for failure to present exculpatory evidence to the grand jury, but now argues on appeal that the indictment should be dismissed.

■ It is well established that this court will not consider issues raised on appeal that were not presented in the lower court. *State v. Laliberte*, 124 N.H. 621, 621, 474 A.2d 1025, 1025 (1984). We conclude that the defendant has waived his right to appeal on the issue of whether the indictment should have been dismissed.

■■ Even if the defendant had preserved this issue on appeal, there is a presumption of regularity which attaches to grand jury proceedings. *See In re Lopreato*, 511 F.2d 1150, 1152 (1st Cir. 1975). The defendant has not established any evidence of irregularity or flagrant misconduct on the part of the prosecutor that "deceived the grand jury or significantly impaired its ability to exercise independent judgment." *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1982), *cert. denied*, 416 U.S. 932 (1983).

The defendant also argues that the trial court erred in imposing a sentence of life imprisonment with a minimum term of thirty-five (35) years because the statute applicable to the punishment of second degree murder allowed for either life imprisonment *or* a term of years, but not both. RSA 585:4 (1955) (repealed 1974).

This court held in *State v. Conklin*, 115 N.H. 331, 339, 341 A.2d 770, 777 (1975) that, "[c]onstruing the applicable statutory provisions as a whole . . . ," the court was authorized under RSA 607:20 (1955) to impose a sentence for a fixed term of life imprisonment *and* a minimum term. Such a procedure provides "greater flexibility in sentencing." *Id.*

■ The defendant contends that the sentence imposed in *Conklin* is clearly different from that imposed in the present case because the wording in *Conklin*, "not less than forty-five years or more than life imprisonment," plainly intended a term of years whereas in this case the defendant was "sentenced to life imprisonment. . . . His

minimum term shall not be less than 35 years." The distinction urged is purely one of semantics and not one of substance. We conclude that the trial court did not exceed its authority under the statute in imposing a term of years with a maximum term of life imprisonment. *See* RSA 607:21 (1955).

The defendant next argues that a sentence of thirty-five years to life is disproportionate to the crime of second degree murder under both part I, article 18 of the New Hampshire Constitution and the eighth amendment to the Federal Constitution because his sentence is greater than that which he would have received for first degree murder under the statute applicable at the time of the offense. He argues that if the penalty for the lesser offense is more severe than that for the greater offense, the penalty is unconstitutionally disproportionate. We agree.

We begin, as we must, by first making an independent analysis of the protections afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as aids in our analysis, *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983). Thereafter, we need address federal constitutional issues only insofar as federal law would provide greater protection. *State v. Ball*, 124 N.H. at 232, 471 A.2d at 351.

At the time the offense was committed, the penalty for first degree murder was death or imprisonment for life. RSA 585:4 (1955). Because we were bound by the decision rendered in *Furman v. Georgia*, 408 U.S. 238 (1972), the death penalty provision was rendered invalid. *State v. Martineau*, 112 N.H. 278, 279, 293 A.2d 766, 767 (1972). Thus, the maximum sentence for first degree murder under the statute was life imprisonment with an eighteen year minimum term. Laws 1971, 419:3. The punishment for second degree murder under the statute was life imprisonment "or for such term as the court may order." RSA 585:4 (1955).

One of three factors to be considered in determining proportionality of the sentence to the crime is the gravity of the offense and the harshness of the penalty. *Solem v. Helm*, 463 U.S. 277 (1983). "Few would dispute that a lesser included offense should not be punished more severely than the greater offense." *Id.* at 293. The defendant's sentence in this case is clearly harsher than the maximum provided for first degree murder under the statutory scheme applicable in 1972.

The State argues that this court has upheld a constitutional challenge to the harshness of a similar sentence for second degree murder in *State v. Little*, 123 N.H. 433, 462 A.2d 117 (1983). In *Lit-*

*tle,* however, the defendant committed murder in 1981, after the punishment for first degree murder had been increased to life imprisonment with no eligibility for parole. RSA 630:1-a, III. Clearly, under the current statutory scheme, the sentence in *Little* is not disproportionate, whereas the sentence in the present case is disproportionate as applied to the statute then in effect.

The State also argues that this court upheld a similar sentence of forty-five years to life for second degree murder in *State v. Conklin,* 115 N.H. at 339, 341 A.2d at 777 and that therefore the sentence in the present case should also be upheld. *Conklin,* however, was decided before the United States Supreme Court established the standard for proportionate sentencing in *Solem v. Helm supra.* To the extent that our holding in *Conklin* departs from that standard, it is hereby overruled.

We conclude that part I, article 18 of the New Hampshire Constitution provides at least as much protection of individual rights as that established in *Solem v. Helm* and we therefore hold that the sentence of life imprisonment with a minimum term of thirty-five years is disproportionate to the offense of second degree murder under the statute applicable in 1972. RSA 585:4 (1955); *see also* Laws 1971, 419:3. Accordingly, the case must be remanded to the superior court for resentencing of the defendant consistent with this opinion and the statutes then in effect.

Finally, the defendant claims that under both the State and Federal Constitutions, he is entitled to a new trial because he was prejudiced by the fact that some jurors might have seen him in handcuffs outside the courtroom being transported to a sheriff's van. Although it is true that a juror's observation of a defendant in handcuffs might interfere with the presumption of his innocence, *State v. Gilbert,* 121 N.H. 305, 310, 429 A.2d 323, 327 (1981); *Estelle v. Williams,* 425 U.S. 501, 505 (1976), the defendant, to prove such interference, must show that he was prejudiced by what occurred. *State v. Gilbert supra.*

After it was discovered that some of the jurors might have seen the defendant outside the courtroom during the trial, a hearing was held on the defendant's motion to set aside the verdict, and all of the jurors were questioned about what they saw. Five jurors stated that they saw the defendant being led to the sheriff's van, and a few stated that they had seen him in handcuffs, but all the jurors, save one who was unsure, testified that they did not discuss during deliberations having seen him or whether or not he was in handcuffs.

Given the violent and serious nature of the alleged crime in the present case, it should have come as no surprise to the jurors

that the defendant was in custody. "'No prejudice can result from seeing that which is already known.'" *State v. Gilbert supra* (quoting *United States ex rel. Stahl v. Henderson*, 472 F.2d 557 (5th Cir.), *cert. denied*, 411 U.S. 971 (1973)). On the record before us, we conclude that observation of the defendant in handcuffs while he was being transported to the sheriff's van was not prejudicial and is not significant enough to warrant a new trial.

*Affirmed in part; reversed in part; remanded for sentencing.*

All concurred.