Hillsborough-northern judicial district
No. 2001-154

### THE STATE OF NEW HAMPSHIRE

v.

### RONALD ENDERSON

Argued: May 14, 2002
Opinion Issued: August 20, 2002

*Philip T. McLaughlin*, attorney general (*Geoffrey J. Ransom*, senior assistant attorney general, on the brief and orally), for the State.

*Shaheen & Gordon, P.A.*, of Concord (*Steven M. Gordon* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Ronald Enderson, was convicted on eighty counts of gambling. *See* RSA 647:2 (1996). He appeals, contending that the Trial Court (*Barry*, J.) erred in: (1) ruling that unredacted gambling records seized from his residence were admissible; (2) denying his motion *in limine* seeking to exclude expert testimony; (3) denying his motion to strike the testimony of an accomplice; (4) giving a jury instruction on accomplice liability; and (5) imposing an excessive and disproportionate fine as part of sentencing. We affirm.

The record supports the following facts. The defendant ran a gambling operation from his home. As part of the operation, he accepted eighty bets

made by John Astarita from November 1997 to March 1998. Each "bet" was made on a particular day and consisted of multiple wagers placed upon different sporting events. The amount Astarita won or lost for the day was recorded on a "daily sheet." This amount was also tallied on a "final sheet," which tracked the balance from the previous day and any amount won or lost from the previous week of gambling. The gambling records – the daily and final sheets – were kept in a code, which consisted of symbols and notations, such as "JA" for John Astarita. These records not only contained information concerning the bets placed by Astarita, but included bets placed by other individuals. Because they contained evidence of uncharged gambling activities, the defendant argued that the records were inadmissible. In the event that the trial court found them admissible, the defendant requested that the State be ordered to redact those portions of the records referencing the uncharged activities. The trial court found the records admissible and denied the defendant's request to redact them.

Before trial, the defendant sought to exclude the testimony of Alan Phillips, a Federal Bureau of Investigations expert on gambling activities, arguing that the case did not warrant expert testimony. The State countered that Phillips' testimony was necessary to decipher the code of the gambling records and explain how the defendant's gambling operation worked. The defendant's motion to exclude Phillips' testimony was denied.

Because the gambling records showed that various and complicated bets were accepted, including straight side and parlay bets, Phillips concluded that the gambling operation was highly sophisticated. Phillips also interpreted the code used in the records and explained how Astarita placed bets and how much he wagered. Regarding the eighty bets made by Astarita between November and March, the gambling records revealed that he wagered a total of $83,600. Mark Caulfield, the defendant's employee for the previous seven to ten years, testified that he answered phones and took bets for the defendant. Based upon his knowledge of the operation and experience working for the defendant, Caulfield testified that the defendant was ultimately responsible for accepting the bets made by Astarita.

After the close of evidence, the State argued that the indictments sufficiently charged the defendant as the principal, thereby allowing him to prepare a defense to principal *or* accomplice liability. The State thus asked the trial court to instruct the jury on both principal and accomplice liability. The trial court agreed, citing *State v. Barton*, 142 N.H. 391, 395 (1997), and instructed the jury on both theories of liability over the defendant's objection. The jury returned guilty verdicts on all eighty counts. As part of the sentence, the trial court imposed a fine of $2,000 for each count — $160,000 in the aggregate. The defendant moved for

reconsideration of the sentence, arguing in part that the fines were excessive and disproportionate to the offenses. The trial court denied the motion and this appeal followed.

The defendant first argues that admitting the gambling records into evidence violated New Hampshire Rule of Evidence 404(b). Rule 404(b) provides, in part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Alternatively, the defendant contends that the records should have been redacted. The State counters that the records were "a material part of the entire course of conduct surrounding the commission of the alleged crimes," and do not fall within the ambit of Rule 404(b). *State v. Martin*, 138 N.H. 508, 517 (1994); *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997) (Federal Rule of Evidence 404(b) does not apply to gambling records inextricably intertwined with evidence of crime charged).

■ We need not decide whether the admission of the gambling records was error under Rule 404(b), "because even if it was erroneous, the error was harmless." *State v. Hennessey*, 142 N.H. 149, 157 (1997). The harmless error standard is succinctly stated as follows:

> In determining the gravity of an error, this court asks whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict. The evaluation of whether this standard has been achieved involves consideration of the alternative evidence presented at trial and of the character of the inadmissible evidence itself. An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt.

*State v. Vandebogart*, 139 N.H. 145, 157-58 (1994) (citations and quotations omitted). The State bears the burden of proving harmless error. *Hennessey*, 142 N.H. at 158.

Here, the alternative evidence of the defendant's guilt was overwhelming. Investigating officer David Cargill testified that a wiretap intercepted calls to the defendant's home. Cargill identified the caller as Astarita and testified that Astarita called to obtain betting odds and place wagers on professional sporting events. The jury heard the tapes of the intercepted calls. In addition, the defendant's employee, Caulfield, gave a detailed description of each bet placed by Astarita. These specifics were

corroborated by the testimony of the State's expert witness, Phillips. Caulfield explained the terms of each bet Astarita placed and identified the defendant as ultimately responsible for accepting them.

We also conclude that the unredacted records were merely cumulative and inconsequential in relation to the strength of the evidence of guilt. Caulfield testified that the defendant accepted bets made by Astarita and others, and that these bets were tracked in the defendant's gambling records. In other words, Astarita's bets were part of a larger whole – a gambling "business" the defendant ran, and for which he kept records. The State's expert explained how such a business operates, including how bets are accepted and recorded on betting slips. In his opinion, the records indicated that a sophisticated gambling business was being operated. Thus, the jury heard testimony that the defendant ran a gambling *operation*, which, by its very nature, includes accepting bets from more than one individual. Admitting the unredacted records, which included evidence of bets made by other individuals, was merely cumulative.

We note, however, that the State conceded at oral argument that the records could have been redacted effectively and efficiently. Regardless of whether the records constituted evidence of other bad acts, redacting them may have been a simple and effective way to satisfy the defendant's concerns and objections. Obviously, our observations regarding redaction do not alter the conclusion that the evidence admitted in this case was harmless.

We next address the defendant's argument that the trial court erred in denying his motion *in limine* seeking to exclude Phillips' expert testimony. New Hampshire Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether to admit expert testimony "rests within the sound discretion of the trial court." *State v. Sargent*, 144 N.H. 103, 104 (1999). Reversal of a trial court's decision is warranted "only if the appealing party can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the party's case." *Id.* (quotation omitted).

The defendant argues that whether he accepted bets was a straightforward and uncomplicated issue of fact; therefore, Phillips' expert testimony should have been excluded as "not being helpful to the [j]ury on

the basis of [Rule 702]." We disagree. Phillips' testimony aided the jury in understanding how a complicated gambling operation functions. His testimony was also helpful in interpreting the code used in the gambling records, thereby assisting the jury in determining whether the defendant accepted bets from Astarita. Because Phillips' testimony enhanced the jury's search for the truth about the gambling that occurred between Astarita and the defendant, it was admissible. *See State v. St. Laurent*, 138 N.H. 492, 495 (1994).

We do not decide whether, as the defendant alleges, it was error for Phillips to give his opinion regarding the ultimate issue of whether the defendant actually accepted a bet "on all 80 counts," because the defendant failed to make a contemporaneous and specific objection to this portion of Phillips' testimony. *See State v. Bennett*, 144 N.H. 13, 17 (1999). Further, we could not say that Phillips' answer to a single question prejudiced the defendant in this case. *See Sargent*, 144 N.H. at 104 (appealing party must demonstrate, in part, that error prejudiced party's case). We conclude that the trial court's decision to admit Phillips' testimony was neither unreasonable nor untenable.

We now turn to the defendant's third issue on appeal, whether the trial court erred in denying his motion to strike the testimony of Mark Caulfield. According to the defendant, Caulfield's testimony "was not rationally based on his own perception and therefore [was] irrelevant." Essentially, the defendant challenges the sufficiency of the evidence supporting the finding that Caulfield had personal knowledge of the gambling operation and that the defendant was responsible for accepting Astarita's bets. The State counters that evidence was introduced that the defendant employed Caulfield for the previous seven to ten years, and that Caulfield was responsible for answering the phones and accepting bets for the defendant. As the defendant's sole employee, the State concludes that "no one had greater personal knowledge of the business and whether the defendant accepted the [bets] from [Astarita]." We agree.

Under New Hampshire Rule of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The record clearly demonstrates that Caulfield had the requisite personal knowledge to testify as to whether the defendant accepted bets from Astarita. Caulfield's testimony that the defendant was responsible for accepting bets was "based on self-knowledge and a perception of [his] environment," and "[was] neither far-fetched nor irrational." *Cyr v. J.I. Case Co.*, 139 N.H. 193, 200 (1994).

The defendant next contends that the trial court's jury instruction on accomplice liability impermissibly amended the indictments. He does not argue that the indictments failed to charge him with accepting bets from Astarita as a principal; rather, he alleges that the accomplice liability instruction allowed the jury to convict him if it found he merely aided or assisted another in accepting a bet from John Astarita. This instruction, he argues, changed the scope of the indictments, which read that "he accepted a bet . . . made with him by John Astarita."

■ An "indictment that alleges principal liability without reference to accomplice liability sufficiently charges the defendant as an accomplice." *State v. Sinbandith*, 143 N.H. 579, 584 (1999); *see Barton*, 142 N.H. at 395. Here, the defendant was indicted as the principal who accepted bets made by Astarita; therefore, the indictments also sufficiently charged the defendant as an accomplice. Indeed, in stating that he accepted a bet from Astarita, the indictments charged the defendant with accepting the bets himself or assisting or aiding in the acceptance of the bets. This is not a case where, as the defendant argues, the trial court's instruction altered or expanded the scope of the indictments. *See State v. Elliott*, 133 N.H. 759, 765 (1990). The trial court did not err in instructing the jury on accomplice liability.

■ The defendant's final argument is that the fines imposed by the trial court were excessive and disproportional to the offenses under both the State and Federal Constitutions. We have previously concluded that Part I, Article 18 of the New Hampshire Constitution provides at least as much protection against disproportionate punishment as does the Eighth Amendment to the Federal Constitution. *State v. Dayutis*, 127 N.H. 101, 106 (1985). We now reach the same conclusion regarding Part I, Article 33 of the New Hampshire Constitution, as it provides at least as much protection against excessive fines as does the Eighth Amendment. Hence, we need conduct only a State constitutional analysis. *See State v. Ball*, 124 N.H. 226, 231 (1983); *State v. Pliskaner*, 128 N.H. 486, 488 (1986).

■ The defendant argues that the fines imposed by the trial court were disproportionate to his convictions for gambling under RSA 647:2. He also contends that the fines totaling $160,000 went well beyond his capacity to pay and were therefore excessive.

Trial judges are vested with broad discretionary powers with regard to sentencing. To violate the New Hampshire Constitution, a sentence must be grossly disproportionate to the crime. Such an abuse of sentencing discretion will also occur if the trial court fails to consider all the relevant factors necessary to the exercise of its discretion.

*State v. Stearns*, 130 N.H. 475, 493 (1988) (quotations, citations and brackets omitted). In this case, the trial court considered the traditional goals of sentencing when it determined the defendant's sentence. *See State v. Wentworth*, 118 N.H. 832, 842 (1978). Furthermore, the trial court considered the defendant's financial circumstances, the sophistication of the gambling operation, the long period of time the operation was active and the substantial sums of money wagered. Astarita alone wagered in excess of $80,000 with the defendant in the short span of four months.

The record does not support a finding that the fines imposed were so excessive as to constitute an unsustainable exercise of discretion. *See State v. Little*, 123 N.H. 433, 437 (1983); *State v. Lambert*, 147 N.H. 295, 296 (2001). Further, there is no "great imbalance between the gravity of the offense and the harshness of the [fines] as to make the sentence grossly disproportionate and in violation of either the United States or the New Hampshire Constitutions." *State v. Sweeney*, 124 N.H. 396, 402 (1983) (quotation omitted).

*Affirmed.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.